## Stewart *against* Kenower.

A testator thus devised: "I give and bequeath to my son J. R. S. during his natural life, the rents and profits of my farm, and at his death to his children and their heirs, if he has any; if not, to his heirs in fee-simple for ever." *Held*, that the words "heirs in fee-simple for ever" are words of limitation and not of purchase; and by virtue of the rule in *Shelly's Case*, vested in the devisee the two estates until the intervening contingent limitation might take effect, which never did, he having died unmarried and without issue, and hence died seised of an estate in fee.

Such estate may be levied and sold without inquisition or condemnation during the life of the devisee, for when the estate is uncertain as to duration, no inquisition is necessary.

ERROR to the Common Pleas of *Cumberland* county.

This was an action of ejectment by Wm Stewart and others, heirs-at-law of Wm R. Stewart, against David Kenower, for a farm containing 100 acres, in which the parties agreed to the following facts:

Alexander Stewart deceased was seised in his life-time of the tract of land with the appurtenances for which this ejectment is brought. He made his last will and testament the 22d June 1830, which was duly proved 16th December 1830, a copy of which is as follows:

1st. Testator directs his debts and funeral expenses to be satisfied.

2d. Some specific bequests are made to his wife of furniture, &c.

3d. Item, I will and bequeath to my eldest son Wm R. Stewart, during his natural life, and at his death to his children and their heirs, in fee-simple for ever, the brick house and lot of ground I purchased from Joel Funk, in the town of Petersburg, in Adams county. I likewise do bequeath to him all the book account I have charged against him in my book, barring any account that he might or could have against my estate.

Item, I give and bequeath to my son Alexander Stewart during his natural life, and at his death to his children and their heirs in fee-simple for ever, all my farm in Franklin county, called 'Greenwich' in the patent.

Item, I give and bequeath to my son John R. Stewart during his natural life, the rents and profits of my farm east of the Baltimore road, the nearest farm to town, part of it in Shippensburg township and part in Southampton township, and at his death to his children and their heirs, if he has any; if not, to his heirs in fee-simple for ever. I likewise give and bequeath to my son John

R. Stewart during his natural life, and at his death to his children and their heirs in fee-simple for ever, 50 acres of my pine land east or part of it east of the Baltimore road, adjoining lands of George Croft, &c., by the furnace run, &c., just as it may divide.

Item, I give and bequeath to my daughter Margaret Ann Long, wife of Hugh Long, the sum of $500 as soon as conveniently can be paid out of what real estate is to be sold after my decease, and also $500 to be paid after the decease of my wife, out of the proceeds of the real property that will then be sold.

Item, I give and bequeath to my daughter Isabella Clippinger, wife of Jacob Clippinger, during her natural life, and at her death to her children and their heirs in fee-simple for ever, all my farm, part of it in Southampton township, Cumberland county, and part of it in Southampton township, Franklin county, adjoining lands of Patrick Hays, &c., the place she and her husband now *lives* on, to be for her and her family's use during her natural life, and her children and their heirs to enjoy it at her death. I do also likewise give and bequeath to my said daughter Isabella Clippinger, upon the same conditions as above mentioned, 50 acres of my pine land west of the Baltimore road, adjoining George Clippinger, &c.; and she is to have and enjoy the use of it during her natural life, and at her death her children and their heirs in fee simple for ever is to enjoy it.

Also, I give and bequeath to my daughter July Ann Stewart during her natural life, and at her death to her children or her heirs in fee-simple for ever, all my farm west of the Baltimore road, adjoining lands of the heirs of Dr John Simpson, &c. &c. Likewise, I give and bequeath to my said daughter July Ann the following personal property, one cow, &c. [numerous articles of furniture]; some further articles also to his wife: " during her natural life or widowhood, and at her death or marriage they are to be disposed of by my executors the same as my other personal property. Item, I give and bequeath to my brother Andrew Stewart $100, to be paid after the death of my wife out of the sale of my mansion-house. Item, I give and bequeath to my sister Nancy Stewart $50 out of the sale of mansion-house. All the residue of my personal property of every description I order to be sold by my executors hereafter named in this will. It is my will, and I do order it, that my executors sell and sufficient titles make, the following real estate, that is, the residue of my pine lands, adjoining, &c., containing 77 acres and some perches neat measure; likewise to sell my house and lot and large barn adjoining the Methodist church, &c., as soon as practicable after my death, or as soon as a favourable opportunity offers. The pine land would sell better probably by dividing it, &c. It is my will that after the death or marriage of my wife that my executors, as soon as a favourable opportunity offers, do sell my mansion-house and lot, and the orchard lots near the church, &c. The moneys

[Stewart v. Kenower.]

arising from the sales of the above-mentioned real and personal property, after paying all my just debts and funeral charges, and $1000 that my wife draws the interest of during her life or widowhood, I do order that my executors do divide it equally among my six children or their lawful issues, share and share alike. And lastly, I do appoint my wife Jane Stewart executrix, and my son-in-law Hugh Long and my friend David Kenower sole executors, &c."

A judgment was entered against John R. Stewart in Cumberland county at the suit of Edward W. Simpson, No. 152, January term 1835, in the said court. The interest of the said John R. Stewart in the tract of land referred to, containing 100 acres more or less, was levied on by a writ of *fieri facias* issued from the said court in the following terms : Levied on the interest of John R. Stewart in a tract of land (here described) having thereon erected a small log house and log barn, seized, &c. No inquisition or condemnation was had, and by a writ of *venditioni exponas* issued from the same court thereon was sold by the sheriff of the said county, per his deed dated and acknowledged in open court, 19th January 1836, &c., to Jacob Clippinger for $650 in the lifetime of John R. Stewart, (prout record) ; and by said Jacob Clippinger and Isabella his wife conveyed to David Goodyear, and three-fourths of the said tract of land was conveyed by David Goodyear and his wife to John Williamson, David Kenower and Samuel Hepburn, for the consideration of $800 ; prout said deeds, which are made part of this verdict. (The several deeds are for " all the interest of John R. Stewart in a tract of land," the one in question.) John R. Stewart died, never having been married, and without having had any children, and left the said plaintiffs as his heirs-at-law, before the bringing of this suit. If upon these facts the law is in favour of the plaintiffs, then the judgment is to be entered for the plaintiffs, with six cents damages and costs ; if the law is in favour of the defendant, then judgment is to be entered for the defendant.

It is further agreed that the plaintiffs in this case are also the heirs-at-law of Alexander Stewart, the testator.

The court below rendered a judgment for the defendant.

*Reed*, for plaintiff in error, contended that John R. Stewart had but a life estate in the 100 acres of land in question, and that the sheriff's vendee took no interest that could last beyond that period. That it was levied on as a life estate—no inquisition held nor condemnation made ; consequently, the sale was designed only to pass and did pass but a life estate. He contended that by a proper construction of the will, an estate *for life* was vested in John R. Stewart, with *concurrent contingent remainders* in fee to his children who should be living at the time of his death, if he had any ; but if he had no children living at that time, then to *his heirs*

generally in the collateral line, who' are the plaintiffs. He contended that the case did not fall within the famous rule in *Shelly's Case ;* that to make that rule available to the defendants, it must operate on the estate given to John R. Stewart by converting it into a fee; it is the clear principle of that rule that it transfers the inheritance from the *heirs* to the *ancestors.* 7 *Law Lib.* 49. It is said in the same book that no case can be found decided under the rule referred to, in which the ancestor was adjudged tenant for life with remainder to his heirs, special or general, by purchase. In this case, it was not and could not be in John R. Stewart, the ancestor, subject to the rules of descent. By the will, two different remainders are provided for, differing from each other; and in the absence of the will, the land would not necessarily pass to either set provided for by the ordinary canons of descent, nor by the rules of distribution under our intestate laws. Children are words of purchase, and not of descent. From the whole will it is plain the testator, by the word *children,* did not mean his *heirs,* &c. The two words immediately afterwards in the will are used in contradistinction to each other. The great object of the testator appears throughout to have been, to limit the estate for life to his son, and to create a new inheritance in his children. The concurrent contingency, or rather the contingency in its second aspect, did not depend in its accomplishment upon the freehold estate being in the ancestor, but was the creature of the will. It could not be determined till after the death of John R. Stewart, whether the first limitation over to his children would take effect or not; but to pass by descent, the inheritance must have been in the ancestor before and at the period of his death; it could not therefore pass, under the second aspect, till after his death, which was impossible. The estate, in that view, must have passed in virtue of the will, and not by descent. If so, the case is not embraced in the rule in *Shelly's Case.* But we rely mainly on the intent of the testator, as indicated throughout the will. The rule in *Shelly's Case* never had the cordial assent of the bench or bar, and it has been repudiated in equity. 4 *Kent Com.* 217. There never was a time in England nor in Pennsylvania when a man could not by will vest an estate for life in the *ancestor,* and give the inheritance to the *heirs,* if he chose to do so, and used apt words for the purpose. The intention of the testator always furnished the guide, where it could be discovered with proper certainty; and the courts have gone further, in Pennsylvania, in sustaining that intention, than they have gone in England. The counsel referred for a general confirmation of his views, and for authorities as he supposed ruling this case, to *Findlay* v. *Riddle,* (3 *Bin.* 139), embracing the facts, arguments of counsel, authorities cited, and the opinion of the court; also, to the same case reported in 2 *Rawle* 158, (*Stump* v. *Findlay*); and for the same doctrines, to *Dunwoodie* v. *Reed,* (3 *Serg. & Rawle* 435), and to

*Waddel* v. *Rattow*, (5 *Rawle* 231). It was further argued that a particular intent was distinctly manifest, and that it should control any general intent contravening it, and that the testator himself had taken the case out of the rule in *Shelly's Case.*

Again, if the above rule embraced the case, then the whole estate was in John R. Stewart in fee. 4 *Kent Com.* 215. If so, being a present interest in possession, it could not be sold without inquisition and condemnation. Such sale would pass nothing but the life estate, and the interest of the plaintiffs would not be devested. Finally, he contended that the will gave an estate for life to John R. Stewart, with remainders over, either first by way of remainders, or secondly by way of executory devise, or thirdly by estate tail in John R. Stewart, &c.

Under the first aspect, it would present the simple case of an estate for life, and the sheriff's vendee would take no larger estate than that of John R. Stewart, whose estate or interest only was sold, and sold only as and for a life estate.

Under the second aspect, if the terms of the will justify the construction that the estate passed by way of executory devise to the plaintiffs, it is on the ground that the limitation to the first taker was exhausted, and that the whole estate is vested in the plaintiffs.

Under the third aspect, if a fee-tail was vested in John R. Stewart, and the line of particular heirs designated failed, the estate thereupon reverted to the heirs of the testator, who are admitted to be the plaintiffs. See 16 *Serg. & Rawle* 328. If they are entitled to recover in any right, calling them heirs of John R. Stewart would not defeat such right.

*Biddle* and *Watts*, for defendant in error. It is evident from the will of the testator, that he intended to make a *certain* provision for the *children* of his son John R. Stewart, if he had any at his death; but that if he had none, then that which would have gone to them should go to John as an ordinary estate in fee-simple. What estate, then, had John R. Stewart? By the terms of the will, "I give and bequeath to my son John R. Stewart, during his natural life, the rents and profits of my farm, &c.," John took a life estate in the land. *South Sea* v. *Alleine*, (1 *Salk.* 228); *Allen's Rep.* 45; *Cook* v. *Garham*, (1 *Saund.* 186); *Reed* v. *Reed*, (9 *Mass. R.* 372); *Pow. on Dev.* (21 *Law Lib.* 234, *note*), and cases there referred to. John R. Stewart then having a freehold estate, it supported two contingent remainders, which were concurrent and alternative: 1st, a remainder to his *children and their heirs*, if he have any, (a contingency that never happened, John R. Stewart having died unmarried); 2d, a remainder to John R. Stewart's heirs in fee-simple, *if he have no children;* which last contingency did happen. They are contingent remainders, being two several fees, limited merely as substitutes or alternatives one for the other;

that is, the first to John's·children and their heirs if he had any, but if he had none, then to his heirs in fee-simple; thus substituting the heirs of John in the room of John's children and their heirs, in case John died without leaving children. *Loddington* v. *Kyana,* (1 *Ld. Raym.* 208); *Waddell* .v. *Rattow,* (5 *Rawle* 232); *Doe* v. *Holme,* (2 *Bl. Rep.* 777): They are not executory devises, because, when a contingent estate is limited to depend on an estate of freehold which is ·capable of supporting a remainder, it shall be construed to be, not an executory devise, but a contingent remainder. 2 *Saund.* 380; *Dunwoodie* v. *Reed,* (3 *Serg. & Rawle* 441; *Stehman* v. *Stehman,* (1 *Watts* 476); 5 *Rawle* 234; 4 *Kent* 200, 201, 2d *edition.* Here there is a sufficient particular estate; the limitations are concurrent and in defeasance of each other, and the devise is capable, according to the state of the objects at the death of the testator, of taking effect as·a remainder. *Reem* v. *Long,* (*Carth.* 310); 2 *Pow.* .on *Dev.* 237. There is no necessity for construing either limitation to be an executory devise, for immediately on the determination of the particular estate, one or other of these substitutes or alternative remainders must take effect. It is not the case of a fee limited on a fee, but an alternative limitation, termed by Fearne a contingency with a double aspect. *Fearne Con. Rem.* 373. -

What, then, is the rule in *Shelly's Case?* " That where an estate of freehold is limited to a person, and in the same instrument there is a limitation *mediate* or immediate to his heirs, the word *heirs* is to be taken as a word of limitation, or in other words the ancestor takes the whole estate comprised in these words." *Pow. on Dev.* (22. *Law Lib.* 229; *Preston on Estates* 264–67.· Hayes, in his *Treatise on Estates,* (7 *Law Lib. marginal page* 94), says, " It confers the benefit of the remainder on the ancestor himself; it inserts, in effect, his name in the limitation of the remainder; it creates a gift to him, and tacks to such gift the word *heirs,* &c., as words of limitation of his estate. A remainder to the heirs of A. is turned·into a remainder to A. and his heirs." The remainder, therefore, to the heirs of John Stewart is by the preceding rule a remainder to John Stewart and his heirs, and is a contingent one according to the rule laid down in *Fearne on Rem.* 225, because of the concurrent limitation to John's children and their heirs. The rule in Fearne being that where there is a contingent limitation *in fee absolute,* no estate limited afterwards can vest, taking a distinction between estates for life or in tail, and an intermediate limitation in fee. But although contingent, and there is an impossibility of the limitation to the heir vesting in the lifetime of the ancestor, still that is no obstacle to its attaching as a contingent remainder to him, (*Fearne* 34), and his heirs, if he took at all, could take only by descent. *Ib.*

The doctrine " that where there is a contingent limitation in *fee* absolute, no estate limited *afterwards* can be vested," is found

fault with by Hayes in his *Treatise on Real Estate, marginal page* 81. He treats the reasons for the rule as inadequate and unsatisfactory, and asks, "As the contingent remainder conveys no *estate* at all, but only the possibility of an estate, how can its *quantity* affect the vesting of the contingent remainder?" We may well argue then with him, that as John R. Stewart (had the contingent remainder to his children been for life or in tail) would have had a vested remainder executed in him till such time as the intervening limitations became vested, so too, where the contingent intervening limitation is in fee absolute, the mere *quantity* of interest shall not alter the rule, and therefore that John R. Stewart in the present case had a life estate, with a remainder vested or executed *sub modo* till such time as the intervening limitations became vested, and then to open and become separated in order to admit such intervening limitations as they arise. *Fearne* 36-7; 4 *Kent Com.* 210. But in either aspect this remainder to the heirs of John, whether contingent or *quodam modo* vested, by the rule in *Shelly's Case* was John R. Stewart's, and did not belong to his heirs as purchasers.

The rule in *Shelly's Case* has been repeatedly recognised in Pennsylvania. *James's Claim*, (1 *Dall.* 47); *Findlay* v. *Riddle*, (3 *Binn.* 139); 9 *Serg. & Rawle* 365; 2 *Rawle* 191; 10 *Serg. & Rawle* 429-31; 3 *Rawle* 59. 62. 75. The case of *Findlay* v. *Riddle*, relied on by the counsel for the plaintiff in error, is altogether different from this case. Here the estate is first given to John R. Stewart for life; second, at his death, to his *children* and their heirs, if he had any; third, *if not*, to his heirs in fee-simple. The term *heirs*, as used by the testator, evidently comprehends the whole class of heirs, and is clearly a word of limitation. It is impossible the term can have been used to designate one or more individuals; it is *nomen collectionum* for the whole line of inheritable blood.

As to the sale of this land without an inquisition. The sale was made prior to the Act of 1836; consequently, it was sold under the Acts of 1700 and 1705. It is wrong to say that only a life estate was levied and sold; for the levy was *on the interest of John R. Stewart*, and whatever that was passed by the sheriff's deed. No inquisition was necessary, because of the uncertainty of the duration of the estate. It is decided in *Humphreys* v. *Humphreys*, (1 *Yates* 427), that all possible contingent titles in lands accompanied by a real interest may be sold by the sheriff on execution, and that it is unnecessary to hold inquisitions on estates for life, or reversions or remainders, previous to a sale. See, too, *Hurst* v. *Lithgow*, (2 *Yates* 24). In *Burd* v. *Lessee of Dansdale*, (2 *Binn.* 80), it is held that an inquisition is not necessary to the sale of an estate for life, or of any *other estate of uncertain duration.* *Streaper* v. *Fisher* (1 *Rawle* 162) recognises the doctrine that any legal or equitable interest in lands may be

sold in execution, and states that where the sale purports to convey the whole interest of the defendant in the execution, *any* and *every* interest he has will pass. See also remarks of Justice ROGERS, (1 *Rawle* 329).

The opinion of the Court was delivered by

SERGEANT, J.—We are of opinion that the construction given to this devise by the court below is correct. The rule in *Shelly's Case* has been considered a rule of property in Pennsylvania as much as in England, from whom we derive the system under which our tenures of real estate are held and transferred by deed or will. A devise of this kind to others than heirs of the person having the estate for life, would be a contingent remainder, vesting (when it came to vest) by purchase; but the heirs general of a person cannot take from him by purchase—they must take by descent: and therefore the remainder vested, for the purpose of hereditary transmission, in John R. Stewart; and he having by the same conveyance a freehold estate for life, with remainder to his heirs, the two estates by the rule in *Shelly's Case* united together, and he was seised of an estate in fee-simple. As, however, it was liable to be defeated by his dying and leaving children, the union was not absolute, but *sub modo*, so as to open by operation of law when that event occurred. That event never having occurred, his estate continued. See *Fearne's Con. Rem.* 34–7; *Lewis Bowles's Case*, (11 *Rep.* 80); *Preston on Estates*.

In regard to the other objection, that there was no inquisition nor condemnation, we think it falls within that class of cases in which our laws do not contemplate an inquisition, the estate being of uncertain duration, as has been held in regard to estates for life, contingent interests and others. No jury could say that such an estate would pay in seven years, and extend it; for the next day John R. Stewart might marry, beget a child, and die; and a child even in *ventre sa mère* would defeat his fee-simple altogether.

Judgment affirmed.