## Price *versus* Taylor and Wife.

A testatrix devised as follows:

"I give and bequeath all my messuage, plantation, or tract of land situate in the township of Pennsbury, to my granddaughter, A. B. T., for and during her life, provided she shall not leave issue at her death, but if she shall leave lawful issue at her decease, then it is my will that my plantation shall go in fee simple to her heirs for ever.

"In case my said granddaughter, A. B. T., should not leave issue at her death, I give and devise my said plantation to the children of my sister R. B., it to be sold, and the proceeds divided between them, share and share alike, and if any of my said nieces or nephews, the children of my said sister R., should be deceased leaving children, their shares respectively to go to said children."

The will was dated prior to the Act of 1855, but the death of testatrix was subsequent to its passage, the devisee having a child living. *Held*,

1. That the devise created an estate tail general, in A. B. T.

2. That such estates are included in the Intestate Act of 8th April, 1833, regulating descents of real estate, and descend to the heirs generally, and not to the eldest son. Per LOWRIE, J.

3. Under this rule of interpretation, the court will incline to construe a devise in doubtful cases, to create an estate tail, where it is to descend to all the children equally, as favouring the heir, and being in exact accordance with our law of lineal descents.

4. That the testatrix having died after the passage of the Act of 27th April,

[Price *v.* Taylor and Wife.]

1855, though the will was written and executed before, the devise is subject to the provisions of that law.

5. The purpose of that act is to convert words of entailment in estates thereafter created, into words of general inheritance in fee, and thereby repeals the statute *de donis conditionalibus.*

6. By this devise the lineal heirs of A. B. T. are to take the remainder, not as persons selected out of the number of her lineal descendants, but as such lineal descendants of every degree from the first taker, and according to our law of descents, and therefore under the rule in Shelly's Case, they take an estate tail.

7. That the devise over being on an indefinite failure of issue, that is of issue living at the death of the first taker, does not prevent the devise from creating an estate tail.

8. The limitation to the issue in fee simple for ever goes for nothing, as being inconsistent with the lineal descent with which the estate starts.

9. An estate tail has but one life's duration, if the donee dies without leaving issue at his death; but it is not shortened by the fact of there being a limitation over on that condition.

10. A fee is converted *by implication* into an entail, by a subsequent limitation over on an indefinite failure of issue: but if the limitation over be on default of issue, at death, no such implication can arise, and the limitation over merely reduces the fee to a conditional one.

ERROR to the Common Pleas of *Chester county.*

This was an amicable action in debt, in which the parties agreed on the following case stated :—

It is agreed that an amicable action in the above form be entered in the Common Pleas of Chester county, and the following statement of facts to be considered in the nature of a special verdict, and subject to a writ of error; be submitted for the opinion of the court.

Ann Bennett, of Pennsbury township, in said county, being seised in fee of the premises hereinafter mentioned, by her last will and testament, dated July 19th, 1852, and proved December 5th, 1855, among other things, devised as follows :—

" I give and bequeath all my messuage, plantation, or tract of land, situate in the township of Pennsbury, to my granddaughter, Ann B. Taylor, for and during her life, provided she shall not leave issue at her death, but if she shall leave lawful issue at her decease, then it is my will that my plantation shall go in fee simple to her heirs for ever. In case my said granddaughter, Ann B. Taylor, should not leave issue at her death, I give and devise my said plantation to the children of my sister, Rebecca Baker, it to be sold, and the proceeds divided between them, share and share alike, and if any of my said nieces or nephews, the children of my said sister Rebecca, should be deceased, leaving children, their shares respectively to go to said children."

The said testatrix died about the 1st day of December, 1855.

On the 3d day of January, 1856, Richard B. Taylor, husband of the said Ann B. Taylor, by articles of agreement under seal, covenanted and agreed to convey to Paxson Price, the said real

[Price *v.* Taylor and Wife.]

estate on the 15th day of January, 1856, and to make him a good and sufficient deed therefor in fee simple, and the said Paxson Price covenanted and agreed to pay the said Richard B. Taylor therefor, $5500, as follows, $500 on the said 15th of January, 1856, and the balance in one year, with interest to be secured by judgment upon the premises.

On the said 15th of January, 1856, the said Richard B. Taylor tendered to the said Paxson Price a deed of conveyance for the said premises, executed by himself and the said Ann B. Taylor, his wife, in due form of law, conveying the fee simple in said premises, and demanded the payment of the said $500, and judgment for the remainder, agreeably to said recited article of agreement.

The said Paxson Price declined to receive the said deed, and pay and secure the said purchase-money.

The said Richard B. Taylor and wife have one child living.

The question for the opinion of the court is, whether, under these circumstances, the plaintiff is entitled to recover.

If the court should be of opinion with the plaintiff, judgment to be entered in his favour for the said sum of $500.

If otherwise, judgment to be entered for the defendant.

The court below (HAINES, P. J.) entered judgment on the case stated in favour of the plaintiff.

This was the error assigned in this court.

*Futhey,* for plaintiff in error.—The question is, whether the will confers such a title upon Ann Taylor, as enables herself and husband to convey an absolute fee to the purchaser.

It is apparent that the testatrix intended only to give her a life estate. Is there anything in the policy of the law which calls for a different construction to be put upon this devise? It is said that this devise creates an estate tail in Ann under the rule in Shelly's Case. But it is admitted that would defeat the intention of the testatrix. It was her intention that the children of Ann should take a *fee simple* as purchasers, and this can only be carried out by holding Ann's estate to be for life. If *fee tail*, it would go to the heir at common law in exclusion of her other children. When there is a general and particular intent, the courts will construe it, if possible, to give effect to both; if this cannot be done, effect will be given to the general intent, although the particular intent be thereby subverted. The particular intent here is, that Ann shall have a life estate; the general, that her children shall have a *fee simple* after her death. The case of Findlay *v.* Riddle, 3 *Binn.* 139, it is submitted, rules this case. In Stump *v.* Findley, 2 *R.* 168, the same will was again before this court, and the devise held only to be an estate for life. The only difference is in the words "as

[Price *v.* Taylor and Wife.]

tenants in common," which simply show that it was intended all the children should take.    In the present, the intent is clear that *all* the children of Ann should take as tenants in common, in *fee simple*, at her death.    A reference to the bequest of the residue throws light on this devise.    The interest is to be paid to Ann B. Taylor *during her life*, if she leave no *issue*, to go to the *children* of her sister, Rebecca Baker, and if any of them be leaving *heirs*, their shares to be divided between said *heirs*."    She uses the word "*heirs*" in the distribution of the personal estate in precisely the same sense she uses the word "*children*," in the devise of the real estate.

In Bennett *v.* Morris, 5 *R.* 9, a devise " to be hers during her natural life, and then to her only heir during its life," held an estate for life, with contingent remainder to those who should be her heirs: Abbott *v.* Jenkins, 10 *S. & R.* 296; Dunwoodie *v.* Reed, 3 *Id.* 434; Lees *v.* Mosely, 1 *Y. & C.* 589; 2 *Jarman on Wills* 350; Cooper *v.* Collis, 1 *D. & E.* 294; Doe *v.* Burnsel, 6 *Id.* 30; Hackley *v.* Mawbey, 3 *Bro. C. C.* 82; Gilman *v.* Elvey, 4 *East* 313; 2 *Jarman on Wills* 331, 333; Waddell *v.* Rattew, 5 *R.* 231; 6 *Cruise* 319, 326.

In a will, *issue* is either a word of limitation, or of purchase, as will best answer the intention of the testator: 6 *Crui.* 327–8. Where the first takers were vested with an estate in fee tail under, the rule in Shelly's Case, it was necessary to give effect to the *chief intention* of the testator; the particular intent giving way to the general: Carter *v.* McMichael, 10 *S. & R.* 429; Evans *v.* Davis, 1 *Y.* 332; James's Claim, 1 *Dall.* 47; Paxson *v.* Lefferts, 3 *R.* 59; Hileman *v.* Bauslaugh, 1 *Harris* 344; Morgan *v.* George, 4 *Id.* 95; Webb *v.* Packey, 5 *T. R.* 299; 2 *Jarman* 340; 6 *Crui.* 328–361.

To hold this to be an estate tail in Ann Taylor would defeat not only the *particular intent*, but the declared *general intent* of testator, that the children should have it at her death in fee simple.    The direction to the children to take a fee simple is inconsistent with the derivation of estate tail from their mother: Stehman *v.* Stehman, 1 *Watts* 474.    The giving of a life estate to Ann Taylor in the personalty, illustrates the intention of testatrix to give her but a *life* interest in the realty.

But if a fee tail, the deed tendered was not in accordance with the Act 16th January, 1799, for the barring of entails.    The Act 27th April, 1855, does not operate, because the will was made prior to its passage, though testatrix died afterwards.    The construction of the will must be judged of as the law stood when it was executed—the act is not retroactive in its operation: Mullen *v.* McKelvey, 5 *Watts* 400; Murray *v.* Murray, 6 *Id.* 356; Jack *v.* Shoenberger, 10 *Harris* 419; Mullock *v.* Sander, 5 *W. & S.* 108;

[Price v. Taylor and Wife.]

Martindale v. Warner, 3 *Harris* 471; Greenough v. Greenough, 1 *Jones* 489; Fransen's Will, 2 *Casey* 206.

If it is an estate tail, then the devise over is a contingent remainder, destructible only by a common recovery: Hileman v. Bauslaugh, 1 *Harris* 351. The devise is not a fee simple, because such a construction requires that the words "in fee simple to heirs for ever" should be construed as words of limitation; but taking the whole will together, they were not used in their technical sense, but as words of purchase. If there are words of limitation, and the devise subject to the rule in Shelly's Case, then a fee simple is created in Ann B. Taylor. By that rule, when lands are given to a person for life, with an immediate remainder to the heirs of such devisee, the word heirs operates as a word of limitation, and gives the devisee an estate in fee simple: 2 *Jarman* 178; 6 *Crui.* 301.

The limitation over "*in case she should not leave issue at her death,*" does not create an estate tail, because the period at which the devise over is to take effect, is *expressly* limited to a life in being. The words import a *definite failure of issue,* and come within the exceptions to the general rule that where there is a devise in fee with remainder over on an *indefinite* failure of issue, an estate tail in the first taker is created: 4 *Kent* 274, 277; Eichelberger v. Barnitz, 9 *Watts* 447; Clark v. Baker, 3 *S. & R.* 470; Langley v. Heald, 7 *W. & S.* 96.

An estate tail is implied only from a provision for a general failure of issue.

If the proper construction of this devise be that under the rule in Shelly's Case, Ann B. Taylor take a *fee,* then the devise over, being after a *definite failure of issue,* is good as an *executory devise,* and the fee is consequently liable to be *determined* by the death of Ann B. Taylor, without leaving issue, and only to be rendered absolute by her leaving issue at her death: Pells v. Brown, *Cro. Jac.* 590; Roe v. Jeffrey, 7 *Term R.* 589, 6 *Cruise* 404, et seq., *Fearne* 470; 4 *Kent* 274–277; Langley v. Heald, 7 *W. & S.* 96; Eby v. Eby, 5 *Barr* 461; Jessup v. Smuck, 4 *Harris* 327; Wells v. Ritter, 3 *Wh.* 208; Nightingale v. Burrell, 15 *Pick.* 112, 113; Holm v. Low, 4 *Metcalf* 190; Waddell v. Rattew, 5 *R.* 234; Heath v. Heath, 1 *Bro. C. C.* 147; Johnson v. Curran, 10 *Harris* 498; Holmes v. Holmes, 5 *Bin.* 252.

The cases of Langley v. Heald, Eby v. Eby, Johnson v. Curran, and Holmes v. Holmes, are, in this view of the case, in point.

Where an estate is limited after a fee simple, the second estate can pass only by way of executory devise: 3 *Wh.* 226; 6 *Cruise* 404; 3 *S. R.* 441; where the whole fee is first limited, there can be no remainder: 2 *Cruise* 238; *Fearne* 419.

By the will of Ann B. Taylor, a *defeasible fee simple* is given,

[Price *v.* Taylor and Wife.]

and the limitation over can be only by executory devise : Toman *v.* Dunlap, 6 *Harris* 77.

The purchaser is entitled to a title clear of defects : *Raw. on Cov.* 430 ; 1 *Sugd. on Ven.* 576–605. This being in the nature of a bill in equity, to compel specific performance of a contract, the vendee will not be compelled to accept a doubtful title : *Bright. Eq.* 208; Bomberger *v.* Clippinger, 5 *W. & S.* 310 ; Creigh *v.* Shato, 9 *Id.* 310 ; 4 *Bro. C. C.* 80 ; 1 *Sugd. on Ven.* 585 ; Heath *v.* Heath, 1 *Bro. C. C.* 147 ; 4 *Kent* 270 ; 15 *Pick.* 110 ; Cooper *v.* Denny, 1 *Ves. jr.* 565, *note.*

*Darlington,* for defendant in error.—This devise, prior to the Act of 1855, would have been an estate tail, under the rule in Shelly's Case, 1 *Co.* 104 *a* ; *Co. Lit.* 376. This is regarded as an unbending rule of property in England and in Pennsylvania, in all cases falling within its terms : Findley *v.* Riddle, 3 *Binn.* 159 ; Carter *v.* McMichael, 10 *S. & R.* 429 ; Paxson *v.* Lefferts, 3 *R.* 59.

Stripped of all unnecessary verbiage, the devise in question reads : " I give and bequeath my plantation to Ann B. Taylor for life ; if she shall leave lawful issue at her decease, it shall go in fee simple to her heirs ; if she shall not leave issue at her death, then to be sold and the proceeds paid over." The limitation over for default of issue shows clearly that the testatrix meant " heirs of the body" by the term " heirs" in the devising clause.

The intention is clear that the estate should not go over while there was any issue : 1 *Dall.* 47 ; 10 *S. & R.* 431. This is the leading intent ; to preserve the estate in the first taker and her immediate descendants. This could be done only by the rule in Shelly's Case.

The case of Doe *v.* Applin, 4 *D. & E.* 82, is almost identical with this. The devise was to W. D., to hold to him during his natural life, and after his decease to and amongst his issue, or in default of issue over : held an estate tail in W. D. Numerous authorities are cited to same effect in *Hayes on Estates Tail,* 7 *Law Lib.* 106.

It is unnecessary to elaborate argument upon ground so well trodden, or to do more than briefly note some of the cases in which the question has been presented. Our own cases are sufficiently numerous to dispense with English authorities : James's Claim, 1 *Dall.* 47 ; Evans *v.* Davis, 1 *Yeates* 332 ; Carter *v.* McMichael, 10 *S. & R.* 429 ; Paxson *v.* Lefferts, 3 *R.* 59 ; Heileman *v.* Bauslaugh, 1 *Harris* 344 ; George *v.* Morgan, 4 *Id.* 95 ; Hage *v.* Hage, 2 *S. & R.* 155.

The cases relied on by the plaintiff in error will be found to be exceptions to the rule, and do not impair the rule itself in cases falling within its terms.

The policy of the law favours this construction—

[Price *v.* Taylor and Wife.]

1. On account of the facility with which estates tail could be barred.

2. More especially since the Act of 1855, which declares such devises fee simple.

Does the Act of 1855 apply to this case? The will was made before, but the testatrix died after. The construction should be liberal in advancement of the object the legislature had in view. The case of Mullock *v.* Sander, 5 *W. & S.* 198, decides that the Act of 1833 that passes after-acquired real estate, does not apply to a will executed before, the testator dying afterwards. The reason is obvious. It would pass the estate to A., which the testator supposed would descend to B.

The opinion of the court was delivered by

LOWRIE, J.—All social progress implies some changes in customs and institutions, and these always involve some degree of confusion.

Social development is a continual changing of the spirit of the social system, and if it is not closely observed, and intelligently followed by corresponding and harmonious forms and institutions, society finds itself embarrassed by the conflicting elements of an inconsistent system. Very commonly, forms and institutions remain unchanged, at least nominally, until long after the principles which they were intended to express and enforce, have been essentially altered. And very commonly the old system is altered and amended, either by custom or by legislation, in its most prominent parts, without any adequate attempt being made to adapt the alterations to the minor portions of the system which are properly related to them; and in this way the system becomes seriously complicated in some of its parts. In no parts of our legal system do we meet with greater confusion of ideas, manifested in practice, than that which exists in relation to future and contingent estates and to estates tail: and it is noticed by every writer who treats of these estates.

It is natural to expect greater confusion of thought on this subject here than in England, because of the old and complicated principles being applied here to widely different systems of real estates. In no work has it been so well presented as in Mr. Smith's Treatise on Executory Interests, which contains a very thorough, systematic, and accurate view of the whole subject, in its English aspect, and ought to be referred to in the study of all its different questions.

Very naturally, the rule in Shelly's Case has shared in these embarrassments. Its application becomes quite complicated with us, because of its having been at first, accepted in its English form, and not in its principle, and thus it became an incongruous element in our differing system of descents. It was a logical con-

[Price *v.* Taylor and Wife.]

sequence under the English law of inheritances, that an estate tail general should descend to the eldest son. But with us it would, in logical consequence from our law of descents, have passed to all lineal descendants, according to our law of equality among children. Not being thus treated, it necessarily becomes an element of disorder and confusion. Along with devises and conveyances to a person and his heirs generally, or his lineal heirs in the male or female line, this special kind of estates and assurances was fully confirmed by the statute *de donis condition-alibus.*

If the grant was to a man and his heirs generally, it descended to his lineal and collateral heirs according to the laws of inheritance generally. If to a man and his lineal heirs, general or special, it descended in the general or special line indicated; those who were to take under it being ascertained by the rules of lineal descents. It was to these institutions, that the rule in Shelly's Case was applied: and it is very simple and very just in its principle, however difficult it may sometimes be in its application.

In its principle it is very like to the rule of the statute of uses and of our equity, that disregards the mere form of a title to land, and even some of its minor incidents, and treats it as being really his to whom it substantially belongs, though the form and intention be otherwise. That we may discuss the rule in Shelly's Case with sufficient clearness for the present case and for general purposes, and obtain a perfectly distinct comprehension of the idea which it expresses, we may present it in its simplest form; and as it most frequently refers to devises, we shall speak only of this kind of conveyance. And as the rule has a double aspect, we may divide it into two. Then the first one may be thus expressed: a devise to one for life, with remainder to his heirs, creates a fee simple. The law so treats it, because it is substantially so, and sets aside the apparent intention to make two estates out of it. And the second one may be thus expressed: a devise to one for life, with remainder to the heirs general or special of his body, creates a fee tail, general or special. It is substantially a fee tail, and so the law treats it, notwithstanding the form in which the devise is expressed: *Smith,* §§ 423, 453, 479; *Williams' Real Property* 192–195.

The words, heirs and heirs of the body, most frequently express the relation in which the second takers must stand to the first, in order to come within the rule. But the presence or absence of these words is not conclusive either way, for any other words, such as next of kin, sons, daughters, issue, children, descendants, will answer quite as well, if they appear to be equivalent; and the most appropriate words will not answer, if used in a special and inappropriate sense.

Any form of words, sufficient to show that the remainder is to

go to those whom the law points out as the general or lineal heirs of the first taker, will be sufficient, unless it be perfectly clear that such heirs are selected on their own account, and not simply as heirs of the first taker: 1 *Bro. C. C.* 219.

These propositions combined express the one principle of law, that a devise to one for life with remainder to his heirs general or lineal (in substance, even though not in form), such heirs shall be ascertained by the laws of inheritance, general or lineal, and shall be treated as taking by descent from the devisee, and not by purchase from the devisor. This being the general law of such cases, it becomes entitled to the presumption that it is right, and therefore to the aid of the presumption, that cases falling apparently within the reason of the rule, are intended to be governed by it. And surely the law may very well allow a devisee to reject all limitations upon the relation of ancestor and heir, except such as the law itself declares.

If, therefore, the remainder is to persons standing in the relation of general or special heirs of the tenant for life, the law presumes that they are to take as heirs, unless it unequivocally appears that individuals, other than persons who are to take simply as heirs, are intended: *Smith's Ex. Int.* § 479; *Fearne* 188; 1 *Man. & Gr.* 429; 1 *Bro. C. C.* 219; 3 *Binn.* 163, 164.

We need not refer to the mere feudal reasons that were involved in the origin of the rule, for they have passed away.

The rule regards such devises, not according to their accidental, but according to their substantial character, and thus erects a general principle of interpretation for all such grants, and saves them from the mere arbitrariness that would necessarily result from supposing that every such grant has a purpose peculiar to itself. There is another reason, somewhat more specific and which appears especially in cases where the subsequent takers are described as lineal descendants of the prior one. In almost all such cases, the sons, daughters, children, or issue that are to take, are to be ascertained at the death of the first taker. If, therefore, the devise be to A. for life, with remainder to his eldest son and his heirs general or special, or to his children and their heirs, &c., then it must be treated in one of these two modes. The eldest son or the children must take either as purchaser from the devisor, or as heirs of their ancestor. But generally they are not living at the time of the devise, and are left to be ascertained at the death of the ancestor, and not until then can the grant take effect in their favour. If, therefore, the eldest son or the children are to take as purchasers, and should die before their parent, they would take nothing, and of consequence, no children or grandchildren of theirs could take under such a devise, for no one can take as heir, that which his ancestor never owned.

Going on this hypothesis, a devise over may take effect, even

[*Price v.* Taylor and Wife.]

while many of the descendants of him who was intended to be the first taker are still living. Yet it is very certain that as a general rule, it is intended in such devises, that they shall be for the benefit of all the issue of the first taker indefinitely, and shall not go to others so long as any of them survive.

If we treat the descendants of the first taker as deriving title by descent from him, and not by gift from the devisor, then this purpose is effected, and without it, it could not be: *Smith*, §§ 434–5; 7 *T. R.* 531; 19 *Ves.* 178; 11 *East* 674.

The law first ascertains, as matter of mere interpretation, that persons in a certain line or lines of descent from one person, are to be preferred to all persons that are collateral to those lines, and then, in order to effectuate this intent, it starts the title with and the descent from him, if he had such connexion with the estate as to enable this to be done.

This may very often defeat the specific form in which a devise is worded, but it meets and answers its paramount intent, in its definition of the objects of the testator's bounty, though it at the same time allows those to whom the title passes, to defeat his ulterior purposes, by selling the property. In some instances the subsequent takers are described as issue, and then the literal interpretation would be that all descendants, children, grandchildren, &c., living at the death of their ancestor, should take together and equally; which, as an interpretation of intention, would be much less probable than that to which the laws of lineal descent direct us. And in many cases the word issue is unaccompanied by superadded words of inheritance, and if regarded as a word of purchase, the result (until lately) would have been a mere life estate. But that word may be used as one of inheritance, and when it is so used, the children inherit fees, either general or special.

Again, an estate tail—that is, an estate that is to pass by lineal descent, according to the laws and customs of the country, is the very form of transmission of property to which persons are naturally most favourable; and therefore we naturally incline to expect this law of descent to be provided for, when the devisor thinks of anything beyond the laws of descent of a fee simple. Now, plain as is the principle intended to be expressed by the rule, it has not been found simple in its application, even in England, where it was better adapted in its form to their rules of real property, than it is here. And it can hardly be expected to be of easier application here, where, as at first admitted, it was really a heterogeneous element of our law.

Receiving it in the English sense of it, in its application to estates tail, and considering the eldest son as the heir to an estate tail general, we in fact reversed the order of our law. According to it, an estate tail general would have descended to all the child-

ren, just as in England it would pass to the youngest son, if it was borough English land, or to all the sons equally, in tail, if it was gavelkind land: 4 *B. & C.* 610; *Dyer R.* 133, pl. 5, and 179, pl. 45; 2 *Bl. Rep.* 1228; or to all the daughters equally, if it was a devise in tail female.

It could only be a special tail male that could in strict systematic propriety descend with us to the eldest son. On the branch of the rule, making a devise to one for life, and remainder to his heirs generally, a fee simple, we never thought of looking away from our law of descents, in order to find the heir.

If it was an error to admit the eldest son as the heir to an estate tail general, under our law, it was perhaps an inevitable one, for, inheriting all our forms of wills and conveyances, and of legal practice, from England, we could not if we would, at once build up a perfectly consistent system of legal principles, founded on our new circumstances.

Besides this, our early practice was very probably a proper expression of the intention of such devises, for the law of equality among children could not very soon change the long-established custom of giving a substantial preference to the eldest son. It continued to exist even in our statutes, for a hundred years, so far as to give the eldest son a double share; and many of our early decisions are upon wills made before the rule of entire equality was instituted. In former times it was not generally regarded as wrong for the eldest son to inherit the whole real estate of his parent, subject to such charges as the parent thought proper to impose upon it. But now it is entirely different, since law and custom have introduced entirely different expectations.

Now, therefore, we never suppose that a devise, in form to create an estate tail, was really intended to pass the land to the eldest son, and such an interpretation could not possibly be endured, were it not for the facility with which such estates may be changed into fees simple; and I have known several instances in which eldest sons were too honourable to claim an estate thus descending to them.

The feeling of the hardship of such an interpretation, has undoubtedly been the cause of some of the confusion to be found in the application of the rule to cases where the ancestor had died without barring the entail. Now without deciding, we venture the suggestion, that since the laws of intestates and of wills, of 1833, an estate tail must descend according to our law of lineal descents, and not according to the old English common law; and the following reasons present themselves in support of the suggestion.

1. The reason why estates tail descended to the eldest son under our old laws of descent was, because the descent of such estates was not provided for under our old statutes, and therefore the old common law alone furnished the rule for them: 1 *Yeates* 315.

[Price *v.* Taylor and Wife.]

Our old statutes of descent provided only for the descent of land which the decedent could dispose of by deed or will, and estates tail did not then fall within that category. But the Act of 1799 changed this, and allowed estates tail to be sold and conveyed by deed in a very simple form. Therefore the new law of intestates of 1833, expressly includes such estates, because it declares the line of descent of all land which the decedent might have sold in his lifetime, or disposed of by will.

2. Our statute of wills, passed on the same day with the intestate law, and one of its supplements (6th May, 1844), provides for a lineal descent, in order to prevent a devise to a child, or to a brother or sister, if there is no child, from lapsing by the death of the devisee in the lifetime of the testator; and in such case the descent goes according to our law of lineal descents, on the supposition that such is the testator's intention; that is, on the principle of entailment until it vests.

It may also be worthy of notice, that the decisions in relation to contingent remainders tend in the same direction, in order to keep them from falling by the particular estate enduring beyond the life of the remainder-man.

3. The judicial adoption of the English law of primogeniture in estates tail, has entirely ceased to have any support in our laws and customs, and is now plainly incompatible with them all. Therefore, we can no longer presume, from general words of entailment, that a lineal descent according to the English law is intended.

4. This principle would make our law on this subject, perfectly simple and homogeneous, and we might hope to have wills of this character easily interpreted by the parties or their counsel, without the necessity that now exists, of always resorting to the courts for an authoritative interpretation of them, before making or accepting a title under them. It may be thought that, since the Act of 1855, converting entails thereafter created, into fees simple, this principle can be of very little use.

But this estimate of it may change, when it is considered that, for a very long time to come, the old forms of wills and conveyances will continue to be used, and will require interpretation, and that most of the wills involving these questions, written since 1833, yet remain to be interpreted.

And under this principle, the rule of interpretation that favours the heir in doubtful cases, would be differently applied, even to the same language, depending upon the question of the form of the lineal descent. We incline in favour of an estate tail, if it is to descend to all the children equally, because that is in exact accordance with our laws of lineal descent, and with our customary modes of thinking.

We may now resume the consideration of the special case before

us, and ascertain the influence which the Act of 1855 has upon it. The purpose of that act is to convert words of entailment in estates thereafter created, into words of general inheritance in fee. It repeals the statute *de donis conditionalibus.*

Though this will was written before the act was passed, yet it did not take effect by the testator's death, until some months afterwards. It was therefore created after the law, and must be governed by it.

A will, so far as its form is concerned, would hardly be condemned, if it conformed to the law under which it was written. And interpretation must of course read it as of the time when it was written; but a law would, and does apply to the will, irrespective of intention, and takes hold of it only when it goes into effect. Then the question arises, would this will create an estate tail independently of the Act of 1855?

We may translate the clause in question into some approximation to the usual language of such devises, thus: I give my plantation to Ann for life, with remainder to the heirs of her body in fee simple, for ever (or, and their heirs and assigns for ever), but if she die without leaving issue living at her death, then I give the same to my sister's children. We have used the term heirs of the body where the testatrix used only the word heirs, because her use of the word issue as a synonym, shows this to be her meaning. She means that it shall go to Ann's lineal heirs, if she has any, and if not, then over. It is very evident that they are to take the remainder, not as persons selected out of the number of her lineal descendants, but as the lineal descendants of every degree from the first taker, and according to our law of descents, and therefore under the rule in Shelly's Case, they take an estate tail: *Fearne* 188.

It is for Ann " and her children after her:" 2 *Yeates* 405; 3 *Rawle* 73. It is supposed that it is not an estate tail, because the devise over is on a definite failure of issue, that is, in default of issue living at the death of the first taker. But the contingency on which a remainder depends, does not properly enter into the definition of the precedent estate, though it often happens that their definitions run into each other.

The element of issue living at the death, was in the cases of Carter *v.* McMichael, 10 *S. & R.* 429, and Maurer *v.* Marshall, 16 *State R.* 377; and yet the devises were entailments. It is also to be found in many other cases of entailment: 2 *B. & Ald.* 1; 3 *B. & C.* 799; 7 *Taunt.* 209; 1 *Eden* 119, 473; 12 *Com. B. R.* 18; 8 *Id.* 876; 16 *State R.* 95.

The limitation to the issue in fee simple for ever, goes for nothing, as being inconsistent with the lineal descent with which the estate starts. Words of that kind are very often rejected as incompatible with the character of the descent, just as, in England,

[Price *v.* Taylor and Wife.]

words indicating that the property was to be divided among the heirs, are rejected as contrary to the usual character of the descents with them: 7 *Taunt.* 209; 8 *Com. B. R.* 876; 7 *Man. & Gr.* 738; 1 *East* 229, 424; 5 *Id.* 548; 7 *T. R.* 531; 19 *Ves.* 170; 2 *Bligh* 1.

Such words are not inconsistent with our law of lineal descents, and they are found in the case of Maurer *v.* Marshall (*supra*), an estate tail under a will since the Act of 1833. An estate tail has but one life's duration, if the donee dies without leaving issue at his death; but it is not shortened by the fact of there being a limitation over on that condition. A fee is converted *by implication* into an entail, by a subsequent limitation over on an indefinite failure of issue. But if the limitation over be on default of issue at death, no such implication can arise, and the limitation over merely reduces the fee to a conditional one: *Smith*, §§ 128, 584, 649; 2 *Bos. & Pul.* 324; 2 *Binn.* 455; 1 *S. & R.* 144; 3 *Id.* 487, *n.*; 9 *Watts* 450; 7 *W. & S.* 288. The actual form of this devise is for life, if Ann shall not have issue. It is not without example: 2 *Stra.* 798; 3 *Rawle* 59; but it is a mere reversal of the mode in which the thought is usually expressed; and the substantial thought remaining the same, it does not affect the question. There is a limitation to the issue in fee; but this does not affect the question. So there was in Heilman *v.* Bauslaugh, 13 *State R.* 344; and in numerous other cases, where estates tail were held to have been created: 16 *State R.* 95; 8 *T. R.* 518; 2 *Stra.* 729; 1 *Eden* 119, 424; 5 *B. & Ald.* 910; 3 *East* 548; 6 *Id.* 336.