## Ralston *versus* Waln *et al.*

*Construction of Deed.—Creation of Life Estate in Personal Property.— "Legal Representatives" and "Executors and Administrators," when convertible Terms.*

1. A deed conveying personal property to trustees, for the benefit of a married woman, in *trust* to receive and pay over to her separate use the annual income during her life, with power of appointment in her at her death; and in default of appointment, to hold for the use and benefit of such persons as would have been entitled to the same at her decease, "as her legal representatives, had she died a widow, under and by virtue of the intestate laws," is to be construed as giving a life estate to the wife, with power of appointment at her decease; in default of appointment, the trust property to go to her next of kin under the intestate laws; and therefore she is not entitled, at the death of her husband, and being without children or issue living, to an absolute conveyance of the property from her trustees.

2. But where by another deed the husband and wife granted to the same trustees real and personal property, to hold in *trust* for her separate use for life, with power of appointment at her decease, and in default thereof, to grant and convey "to such person and persons" as "shall and may be her heirs and legal representatives," it was *held*, that the words "legal representatives" were equivalent to "executors and administrators," and that, as the word "heirs" gave her an absolute estate in fee simple in the realty, the trustees were bound to convey to her, as the absolute owner, all the estate embraced in the deed of trust.

CERTIFICATE from the Court at *Nisi Prius.* In Equity.

This was a bill in equity, brought in the court below by Eliza Ralston against Lewis Waln and Dr. Robert Ralston Dorsey, in which complainant alleged that Charles Chauncey and Gerard Ralston, both late of the city of Philadelphia, executors of the last will and testament of Robert Ralston, then late of the said city, deceased, by an indenture dated the 4th day of April, A. D. 1849, duly recorded, to which the complainant was made party of the second part, reciting that the said Robert Ralston held "certain stocks and other items of personal property," therein-

[Ralston *v.* Waln *et al.*]

after set forth, for the sole and separate use of the complainant, then the wife of Ashbel G. Ralston; that by the decease of the said Robert Ralston, the said Charles Chauncey and Gerard Ralston, as the executors of his last will and testament, became and were the trustees of the complainant, "and of the said personal property for the use and benefit" of the complainant, "upon the same uses and trusts upon which it was held by the said Robert Ralston; and that it was the desire of the said Charles Chauncey and Gerard Ralston, and of the complainant, that the trustees of the said property should be changed, and the present defendants, Lewis Waln and Dr. Robert Ralston Dorsey, be appointed trustees in their place and stead." They the said Charles Chauncey and Gerard Ralston, executors as aforesaid, with the consent and approbation of the complainant, did grant and assign unto the said defendants, Lewis Waln and Dr. Robert Ralston Dorsey, certain stocks and securities therein particularly mentioned: "In trust, nevertheless, to receive the interest and dividends, issues and income, and profits of the personal property thereby granted and settled, and to pay over the same" unto the complainant, to her sole and separate use, free, clear, and discharged from the control, interference, debts, engagements, or liabilities of the said A. G. Ralston, her husband, during all the term of her natural life, and from and immediately after her decease, to have and to hold the personal property thereby granted for the use and benefit of such persons, and for such estates as she should appoint by will; and in default of such appointment, then "they the said Lewis Waln and Robert Ralston Dorsey, their successor or successors in the said trust, shall from and after the decease of the said Eliza Ralston, the complainant, have and hold the personal property hereby granted and settled, or other property or investments into which the same shall or may be hereafter converted, to and for the use and benefit of *such person or persons as would have been entitled to the same at the decease of the said Eliza Ralston, as her legal representatives, had she died a widow under and by virtue of the Intestate Laws of the state of Pennsylvania.*"

That said Ashbel G. Ralston, with the complainant, his wife, by an indenture dated the 25th day of June, A. D. 1849, duly recorded, did grant, assign, and convey unto the said defendants, Lewis Waln and Dr. Robert Ralston Dorsey, all the estate, real and personal, whatsoever and wheresoever situate, and whether in possession, remainder, reversion, or expectancy of the complainant, or which she might thereafter become entitled to; and also all the estate, real and personal, wherever situate and being, of every kind and description, of which the said Ashbel G. Ralston was then seised, or possessed, or interested, or should or might thereafter become seised, or possessed, or interested in by

[Ralston *v*. Waln *et al*.]

virtue of his intermarriage with the complainant: In trust, nevertheless (in substance), to invest and keep invested the personal estate as therein set forth; and to recover, collect, and receive the rents, interest, dividend, and income of the said real and personal estate, and pay over the same when and as received, and not by way of anticipation, after deducting the claims, charges, and expenses therein mentioned, into the hands of the complainant, or such person or persons as she should, by any writing under her hand appoint and direct, for and during the term of her natural life, to and for her sole and separate use and benefit, but so that the same should not be subject or liable to the debts, contracts, or engagements of her said husband, and from and immediately after the decease of the complainant, then to grant and convey the trust estate and premises to and for such estate, and estates and interest as she should appoint by will, and, in default of appointment, then "to grant and convey the said premises, and every part thereof, unto such person and persons as at the decease of the said Eliza (the complainant) shall and may be her heirs and legal representatives."

That at the time of the execution of the last stated indenture, the complainant was possessed of or entitled to a considerable personal estate, under the will of a deceased uncle, Benjamin Wiggin, which was afterwards paid, transferred, or assigned unto the said Lewis Waln and Dr. Robert Ralston Dorsey, as trustees under the said last-mentioned indenture, and is now, or its proceeds or avails, held on the trusts thereof.

That the defendants, Lewis Waln and Dr. Robert Ralston Dorsey, accepted the trusts of the said two indentures, and have received and collected the income of the several trust estates up to the present time.

That the complainant's husband, Ashbel G. Ralston, died on the —— day of June, A. D. 1857, and that she has no children or issue living, by reason whereof, as she is advised and believes, and so submits unto the court, she has become absolutely entitled in equity to all the real and personal estate so as aforesaid granted, assigned, and settled by the said two indentures, or to the proceeds and investments thereof, free, clear, and discharged of and from all trusts or limitations whatsoever.

That the complainant has therefore applied to the defendants to grant, convey, and assign to her all the said real and personal estate held by them on the trusts of the said two indentures, which they have refused to do, on the allegation that she is not so as aforesaid absolutely entitled thereto.

The bill then prayed for an account, and for a conveyance and assignment by the two defendants to her of the trust estates.

The answer admitted the facts as stated in the bill, and sub-

[Ralston *v.* Waln *et al.*]

mitted to such order and decree as the court should make in the premises.

The case was heard on bill and answer by the court below, who, on the 24th day of January, A. D. 1863, dismissed the bill without giving any opinion; which was the error assigned.

*Henry Wharton,* for appellant.—For the purposes of the present case, it may be assumed that no real estate in fact passed by the deed of June 25th 1849, nor any personal property, except such as was derived from the estate of a deceased uncle of Mrs. Ralston, and such reversionary or expectant right or interest in the property which was the subject of the first deed, as was left undisposed of thereby. The appellant's husband is now dead, and she is left without issue. Whatever reasonable object the two deeds were designed to accomplish is at an end. In each case the property was her own. In the one case, it had before been impressed only with a trust for her separate use, which of course dropped with her husband's death. In the other case, it had been hers in absolute right. The machinery devised for her protection being, as matters stand, not a protection, but an obstruction, she asks to have it removed, and to have what was and is really her own property placed at her own disposal. The only obstacle in the way of this is occasioned by the contingent personages who in the one deed are described as those who would "have been her legal representatives, had she died a widow, under and by virtue of the intestate laws of Pennsylvania;" and who, in the other deed, are called, in more assured phrase, "her heirs and legal representatives." If these remote and undetermined beneficiaries possess an equal right, in their degree and in their due time, with the appellant; if, in other words, they are "purchasers" of the trust funds, not by their own hand, which would be impossible, but by the deliberate bounty of another, even of the appellant herself, then the obstacle is insurmountable. But if this is not so; if these "legal representatives," hypothetical or absolute, can be shown to have no independent legal existence, or to be in no rational sense the objects of a deliberate and irrevocable gift, then the obstacle is overcome. The words "representatives," "personal representatives," "legal representatives," "legal personal representatives," belong to that class of vague phrases which are employed, after the real meaning has exhausted itself in precise language, to round a sentence or to end a trust, and have therefore called forth a good many decisions. They never correspond to or represent, in a testator's mind for instance, the conception of any specific person or class of persons; of any, in short, whom or which he would be at the trouble of defining. They are the mere guess-work of draughtsmen, thrown in to supply the want of positive instructions, and

[Ralston v. Waln et al.]

to provide in a general way for future events, for which the testator has cared too little to busy himself. Still they, as well as other phrases, have to be construed by courts, and as these are often more puzzled by the absence of meaning than by its bad expression, the decisions are not only numerous, but somewhat conflicting, at least in appearance. This much is clear, that where the words "legal representatives" are used as the mere continuation of a previous limitation, not as a substitution for it; when the object seems merely to indicate generally who is next to take, not to designate a new and distinct class of beneficiaries; when there is no context to qualify the words, or to suggest a special intention, then these words "legal representatives," as to personal property, mean simply executors or administrators who represent a decedent in the eye of the law, and continue his legal existence, just as his heirs do, in other respects: Duncan v. Walker, 1 Yeates 213; 2 Dall. 205; Commonwealth v. Bryan, 6 S. & R. 83; Price v. Strange, 6 Madd. Ch. 159; Saberton v. Skeels, 1 Russ. & M. 587; Hinchcliffe v. Westwood, 2 Deb. & Sm. 216; Smith v. Barneby, 10 Jur. 748; Holloway v. Clarkson, 2 Hare 523; Crawford's Trusts, 2 Drewry 230. See also King v. Cleaveland, 4 De Gex & Jones 477; 26 Beav. 26; Palin v. Hill, 2 M. & K. 70; Cotton v. Cotton, 2 Beav. 70; and is asserted in 2 Williams on Executors 1017.

In the second deed the trust to convey to Mrs. Ralston's "legal representatives" is equivalent to a trust to convey to "her executors or administrators," the more plainly so, since the word "heirs" is coupled therewith in the same sentence. Had the words been "executors and administrators," the court would have compelled an assignment by the trustees, Holloway v. Clarkson, 2 Hare 523, which is exactly the present case, except in that respect, and in this, that there was no trust as here to convey or assign to the executors; that this last is not to be considered as making any difference in this state, as settled by Kuhn v. Newman, 2 Casey 227; Kay v. Scates, 1 Wright 31. It must be admitted that the words "legal representatives" in the first deed cannot possibly mean executors or administrators. They, particularly the executors, would not take under or by virtue of any intestate law. And if we regard the intention, rather than the words, the purpose was to exclude the husband; and as he would take by operation of law, they who are substituted for him must necessarily take by purchase. Of course no subsequent events can alter the construction of a deed. Yet it is absurd that Mrs. Ralston, whose own this fund was—subject to the technical disabilities which attach to a "separate use" in this state, but which cannot outlive the husband—should be crippled by a trust created only by the executors of her former trustee; for her own consent and approbation, which she joined in the deed to express,

had then no legal or equitable effect. Perhaps, in the absence of evidence, she has no right to deny that the trusts thus declared were in substantial accordance with those which bound the property in the hands of Robert Ralston, the original trustee. But there is enough on the face of the deed to show that, subject to whatever limitations it creates or repeats, the fund really belonged to her, and not to anybody else. Then we find it limited on her death to the use of such persons as then would have been (say her next of kin), if she had died a widow. If her husband survived her he would have been thereby excluded; if he did not, as the fact is, then the hypothetical and the actual next of kin must coincide at her death. At the present time we have in her, created or submitted to by herself, a life estate, a power of appointment by will, and in default of that, a limitation on her own property to her next of kin. It would not do to apply to such a limitation the strict rules which are intended to protect the bounty of a stranger, which must reach its objects, however capriciously selected.

The solution lies in this. As respects Mrs. Ralston, her next of kin can never be more than volunteers. They will have no rights but such as are derived through her; they will only "represent" her, without any personal claims of their own. Now there is a very material difference between such a case and the common one where the next of kin claims under the will or settlement of a stranger: Tipping *v.* Pigott, 1 Eq. Cas. Abr. 385. This case has been supposed to have been covertly disparaged in Mansell *v.* Mansell, 2 P. W. 684, but it is tacitly approved in Moody *v.* Walters, 16 Ves. 312, and is founded on substantial reason. For, to allow the heirs or executors of a settlor, through whose voluntary act alone they can pretend anything, to dispute his acts would be a practical absurdity. See Mackason's Appeal, 6 Wright 330. It is submitted that, as respects both deeds of trust, the appellant being now *sui juris*, and their objects having ceased, she is entitled to have back the funds which originally belonged to herself, clear of the nominal limitations, which alone now remain in existence. It may be urged that the very term, "legal representatives," implies a subordination on their part to all lawful acts of the person whom they represent, and that they could hereafter only claim in her right; they could never contest her disposition of the property.

*G. M. Wharton*, for appellee. — The defendants, who are trustees, are personally not opposed to the plaintiff's demand for a reconveyance; but, being advised by counsel that there was, at least, a very grave doubt as to the correctness of her construction of the trust-deeds in question, have thought it right and

[Ralston *v.* Waln *et al.*]

prudent to ask the protection of a decree of court. With that decree they will be entirely satisfied.

There are two deeds, the language of which is not identical, and the defendants suppose that the court may arrive at different conclusions concerning them.

The trust in each deed is for the life of the wife, with a power of appointment in her, by will; and in the absence of a testamentary appointment, the trust for her representatives is limited, as therein set forth. The question therefore is: Mr. Ralston having died, and Mrs. Ralston, the complainant, being alive, can she now claim the absolute interest in the whole of the subjects of these two deeds of trust?

The affirmative reply to this question involves the hypothesis that there can be no one in the future who can assert the title to the trust properties, or any portion of them, as against the proposed disposition of them by the trustees, or as against any disposition of them by Mrs. Ralston in her lifetime, and in case of her future intestacy; and it also involves the hypothesis that there is and can be no one, who can hereafter call the trustees personally to account for not having retained the subjects of the trust in their own power until the contingency of the decease of Mrs. Ralston.

If the legatees of Mrs. Ralston (in the event of her leaving a will), or her legal representatives (as defined by the description of them in the respective deeds), can claim merely by derivation or succession from her, and have no rights as purchasers under the designation in those instruments, it may be that the trustees would be justified in transferring the estates to her; but if the future representatives of the complainant can claim by virtue of the settlements, and as purchasers themselves, their future rights ought not to be injuriously affected by any present action of a court of equity.

If Mrs. Ralston embodies now the rights of future legatees or representatives, she can dispose of them. If those rights are secured by the deeds of trust, she cannot.

Are her legal representatives so described in the deeds as to be purchasers, or not?

1. As to the first deed, that of April 4th 1849. The legal representatives, who are to take thereunder, are such as, under the intestate laws of Pennsylvania, would be entitled to claim, if she were, at the time of her decease, a widow—that is, exclusively of her husband, if he survived her. They are therefore differently entitled than they would be were her husband at his wife's decease alive, and not himself excluded by the trust from claiming. Their title, consequently, would be, not derivatively from her under the intestate law of the state, but would arise

[Ralston *v.* Waln *et al.*]

under the form of the deed, and, by force of its description, as purchasers of their respective interests.

If the phrase " legal representatives," in this deed, mean " executors or administrators," the argument of the appellant would have force. Under such a limitation, the executors and administrators would probably not take as purchasers, but would simply represent the decedent, and continue her legal existence. But this is not pretended to be the case, under the limitation as it stands in the first deed. Her representatives taking, therefore, whenever they shall take, as purchasers, the tenant for life has no control or power over their future interests.

If executors and administrators take as such, for distribution thereafter, either under a will or in accordance with the intestate law, they act, in making such distribution, either in accordance with the will of the testator or with the general provisions of law, and not as trustees following the directions of a deed of trust, made *inter partes*.

The expression " legal representatives" has been held to signify " next of kin," and of course to be words of purchase, in the following cases : King *v.* Cleveland, 4 De Gex & Jones 477 ; s. c., 26 Beavan 26 ; Gittings *v.* McDermott, 2 M. & K. 69 ; Cotton *v.* Cotton, 2 Beavan 70 ; Anderson *v.* Dawson, 15 Ves. Jr. 532 ; Robinson *v.* Smith, 6 Simons 47 ; Nicholson *v.* Wilson, 14 Id.. 549 ; Bridge *v.* Abbott, 3 Bro. C. C. 224, a leading case, affirmed in Palin *v.* Hills, 1 M. & K. 480, &c. ; Ware *v.* Fisher, 2 Yeates 578. In this case, the persons to take are to be sought for at the death of Mrs. Ralston. The point to be determined is whether they have an interest independently of hers.

2. As to the second deed, that of June 25th 1849. If the terms of the trust can be properly construed to be equivalent to directing a conveyance to the executors and administrators of Mrs. Ralston, after her death, there would seem to be the authority of Holloway *v.* Clarkson, 2 Hare 523, and of other cases, to justify treating the limitation as one which would vest the whole interest, at the death of the husband, in the surviving wife. The equity undoubtedly is strengthened by the fact that the whole estate was her own originally.

The opinion of the court was delivered, February 19th 1863, by

READ, J.—Two deeds of trust are included in this bill, including different properties, and clothed in different language, and demanding separate if not different constructions. The first deed, of the 4th April 1849, conveyed to the defendant certain stocks and securities therein mentioned, which had been originally held by Robert Ralston, for the sole and separate use of the complainant, then the wife of Ashbel G. Ralston, in trust to receive the income and to pay over the same to the complainant,

to her sole and separate use, free, clear, and discharged from the control, interference, engagements, or liabilities of the said A. G. Ralston, her husband, during all the term of her natural life, and from and immediately after her decease to have and to hold the personal property thereby granted for the use and benefit of such persons, and for such estates as she should appoint by will, and in default of such appointment "they, the said Lewis Waln and Robert Ralston Dorsey, their successor, or successors in the trust, shall, from and after the decease of the said Eliza Ralston (the complainant), have and hold the personal property hereby granted and settled, or other property or investments into which the same shall or may be hereafter converted, to and for the use and benefit of such person or persons as would have been entitled to the same at the decease of the said Eliza Ralston, as her legal representatives, had she died a widow, under and by virtue of the 'intestate laws of Pennsylvania.'"

We are simply asked to construe this deed of trust, which gives a life estate to Mrs. Ralston, with a power of appointment by will, in default of the exercise of which power it is given to the person or persons who would be her next of kin at her decease, by the intestate laws of Pennsylvania. There can be no doubt, from the language of this clause, that this is the true meaning of the words "her legal representatives," and the provision that they are to take, as if she had died a widow, strengthens this obvious construction: Anderson *v.* Dawson, 15 Vesey, Jr. 532; Hanson *v.* Miller, 14 Simons 22.

The trustees under this deed cannot, therefore, be decreed to transfer to Mrs. Ralston, or according to her direction.

The second deed, of the 25th June 1849, by Ashbel G. Ralston and wife (the present complainant), to the same trustees, demands an entirely different construction of the words "legal representatives," which here clearly mean executors and administrators. By the very able opinion of V. C. Kindersley, in Re Crawford's Trust, 23 Law Jour., N. S., ch. 625, 2 Drewry 230, it is clearly shown that the ordinary legal sense of the terms "legal personal representatives," "legal representatives," "personal representatives," and "representatives," is executors and administrators. In the present case the words of the conveyance include both real and personal estate, not only of the complainant, but also of her husband, of which he was or might be seised or possessed, by virtue of his intermarriage with her. There is then given a life estate to her separate use, with a power of appointment by will, and in default of appointment, the trustees are then "to grant and convey the said premises, and every part thereof, unto such person and persons as at the decease of the said Eliza (the complainant) shall and may be her heirs and legal representatives." The word heirs is applicable to real estate, and undoubtedly gives

[Ralston *v.* Waln *et al.*]

Mrs. Ralston, as widow, an absolute estate in fee simple. In the same way the words legal representatives mean executors and administrators, and of course the complainant is entitled to the personal estate absolutely : 2 Wms. on Executors 1015.

And now, February 19th 1863, it is ordered, adjudged, and decreed, that so much of the decree of the Court of Nisi Prius as dismisses the bill in relation to the relief sought in reference to the deed of the 4th April 1849, be affirmed, the complainant not being entitled to a conveyance from the defendants of the estate embraced in it, and as to the rest of the relief sought by the plaintiff's bill, the said decree be reversed, and the said defendant's trustees in the deed of the 25th June 1849, are ordered to convey and assign to the plaintiff all the estate embraced in the said deed and held by them, the said plaintiff being entitled to the same as the absolute owner thereof.