# Biddle's Appeal.

1. A testator gave to his daughter " one-eighth of all his real and personal estate," the legacy to " remain in the hands of my executors so long as she remains single, and the interest payable to her each year, and on the event of her marrying and she desiring to have her legacy; my executors to pay it to her." The concluding clause of the will was " if any of my sons and daughters die without lawful heirs, then in that case, their portion reverts back to my heirs in common, share and share alike." This was a vested legacy, and the concluding clause did not carry it to the testator's heirs on her death without issue.

2. The postponement of the payment until marriage did not destroy the vested character of the legacy.

3. Having married she demanded and received part of her legacy ; if there were a trust in the executors, and her election was required, demanding part was an election as to the whole, determined the trust and vested the whole legacy in her.

4. The words " lawful heirs" in the concluding clause meant " lawful issue," and conveyed an absolute estate in the personalty.

May 19th 1871. Before AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Court of Common Pleas of *Blair county :* Of May Term 1871, No. 84. In the estate of John Biddle, deceased.

The decedent died in 1847, having made a will dated June 14th of that year, and proved February 24th 1848, and owning both real and personal estate. After giving $500 to a granddaughter, and directing the payment of $150 to his daughter Christiana as compensation for labor for him, he gave, " unto my five sons and four daughters all the residue of my real estate in equal portions, as follows : To my son John I give, &c., the mansion tract I now

live on, &c.; I further give, &c., to my son John fourteen acres, &c., which I value at seven dollars per acre," which he was to pay to the executors. "I will, &c., to my son Charles Biddle the residue of said tract, &c., which I value to him at $35 per acre; I also give unto my son Charles fourteen acres mountain land, &c., which I value at $7 per acre; and whatever these two tracts at the valuation amounts to more than his legacy, or one-eighth part of all my real and personal estate after deducting, &c., he shall then pay to my executors for the share of his other brothers and sisters in the following manner," &c. "I will, &c., my son Jacob a part of the Brooks tract of land, &c., which I value to him at the sum of $5083.50, &c.; the remainder of said Brooks tract, &c., I bequeath to my daughter Drusanna, which I value at $4583.50," &c. He gave to his son George one-eighth part of his real and personal estate, charged on Jacob's and Drusanna's tracts. He then gave to his daughter Christiana as follows:—

"I give, will and devise to my daughter Christiana the one-eighth part of all my real and personal estate, subject to the before-mentioned devises, &c. * * * It is my will that the legacy I have given to my daughter Christiana, shall remain in the hands of my hereinafter-named executors, so long as she remains single, and the interest payable to her each year, and on the event of her marrying, and she desiring to have her legacy, my hereinafter-named executors to pay it to her."

He then gave to his other children legacies, each one-eighth of his estate, and concluded:—

"The residue and remainder of all my personal and real estate not hereinbefore already disposed of, shall be sold by my hereinafter named executors, so soon after my death as can be done conveniently, and out of the proceeds thereof my hereinafter-named executors shall pay to Elizabeth Snowberger, &c., Rachel Boyd, &c., and to my daughter Christiana their several legacies, in the way and manner I have heretofore directed, in proportion as the same comes from the payments from my sons and sale of my real and personal property. It is further my will that if any of my sons and daughters die without lawful heirs, then in that case their portion reverts back to my heirs in common, share and share alike. And lastly, I appoint my sons Andrew and Charles Biddle, the executors of this my last will," &c.

Christiana subsequently married William Delancy. In February 1853, the executors filed their final administration account, by which it appeared that Mrs. Delancy's share of her father's estate under the will was $2283. She died September 1st 1856, and administration of her estate was granted to her husband.

On the 28th of January 1867, Delancy, as administrator, &c., of his wife, presented a petition setting out the bequest to her and the other facts as above stated, and prayed the court to

make a decree against the executors for the payment of the legacy.

The executors answered amongst other things that Mrs. Delancy had been "paid in her lifetime the interest and all the principal of her additional legacy except about $500 or $550; that the said sums were paid her in accordance with the directions of said will, the interest payable to her each year while single, and the principal after her marriage as she desired and requested it; that she died on the          day of          A. D. 1855 or 1856, without lawful heirs, and the balance of said legacy remaining in hands of said executors was distributed and paid to the other heirs of John Biddle, deceased, share and share alike, as directed by testator."

By an amended answer the executors averred: that the balance of the legacy due to Christiana Delancy was tendered to her about April 2d 1856, in the presence of her husband, and that she refused to receive it, and said she desired it to remain in the hands of the executors.

The matter was referred to A. S. Landis, Esq., as auditor.

The evidence before him was that a considerable portion of the $2283, the amount of her legacy, had been paid to her before the final settlement of the executor's account in 1853; that shortly before her death, Charles, one of the executors, offered her the balance. She declined taking it; she said she wanted it to stay in his hands, as she did not need it at the time.

Charles, the executor, testified, that on the occasion spoken of, he paid her the interest then due her on the balance up to that date, and offered her the principal; she said she wished it to remain in the executors' hands where it was; he then offered her his note with security to close up the account, but she declined to take it. He testified that he had paid the money out to the other heirs since her death.

The auditor, in concluding his report, in which he discussed the authorities and applied them to the facts, said:—

"The auditor is, therefore, of opinion that the balance of the legacy was vested in Christiana Delancy, the gift being limited over on an indefinite failure of issue, by operation of the rule of law in such cases; the gift over was void for remoteness, and it therefore passed and vested in her absolutely, and her administrator is entitled to receive the payment of the same with interest."

He accordingly reported that there was due from the executors to the estate of Mrs. Delancy on the 24th of March 1871, the sum of $1304.20.

The executors filed exceptions to the report of the auditor. The Orphans' Court overruled the exceptions and confirmed the report.

[Biddle's Appeal.]

On appeal by the executors to the Supreme Court, they assigned the decree of confirmation for error.

*H. M. Baldridge* and *L. Calvin*, for appellants.—In gifts of personalty, " die without leaving issue," means die without leaving issue at the death of the person the failure of whose issue is spoken of: Diehl *v.* King, 6 S. & R. 32; Still *v.* Speer, 9 Wright 171; Hagerty *v.* Albright, 2 P. F. Smith 274. "Then in that case," shows the testator intended to limit the failure of issue to the death of the first taker: Diehl *v.* King, *supra;* Rapp *v.* Rapp, 6 Barr 45; Langley *v.* Heald, 7 W. & S. 98; Vaughn *v.* Dickes, 8 Harris 514; Bedford's Appeal, 4 Wright 22.

*S. S. Blair*, for appellee.—The expressions " without heirs " and " without issue," in respect to legacies, are equivalent: Hagerty *v.* Albright, 2 P. F. Smith 274; Garrat *v.* Cockerel, 1 Younge & Col. 501; Amelia Smith's Appeal, 11 Harris 9; Campbell *v.* Harding, 2 Russ. and Mylne 390; Mengel's Appeal, 11 P. F. Smith 249; Bigge *v.* Bensley, 1 Bro. C. R. 188.

The opinion of the court was delivered, May 25th 1871, by

AGNEW, J.—The testator John Biddle willed and devised to his daughter Christiana the one-eighth part of all his real and personal estate; and directed his legacy to her to remain in the hands of his executors so long as she remained single, the interest being payable to her yearly, and in the event of her marriage the legacy to be paid to herself if she desired it. After her marriage the executors paid to her at her request two-thirds or more of the legacy, the remainder being suffered by her to remain in their hands. It is very clear that this bequest vested in Christiana an absolute estate in the personal, and since the Wills Act of 1833, a fee simple in the real estate. Indeed, the blending of the real and personal estate would have carried a fee simple before that act. The postponement of the payment of the principal until marriage did not detract from the absolute and vested character of her interest in the personalty. And clearly the trust in the executors, if any, ceased at marriage when she demanded payment. If the expression, " and she desiring to have her legacy," at that time, might be deemed to vest in her a right of election merely, still the election was made according to the testimony, and she actually received from the executors two-thirds or more of the legacy after her marriage and before her death. The election to receive the legacy was therefore actually made. That part of the money remaining in the hands of the executors partook of the character of the whole, and was as truly and absolutely hers as the part she received. It would be difficult to

19 P. F. SMITH—13

[Biddle's Appeal.]

separate the right of election into two parts. The legacy was a unit, and the election to receive it at marriage, was not divisible unless by her express agreement. Separation is therefore not to be inferred from the mere fact of the smaller part of the legacy being left in the hands of the executors. That must be deemed but a matter of convenience in the absence of an express arrangement otherwise. The whole legacy must therefore be considered as absolutely vested in her.

This being personal estate, the subsequent clause in the will did not carry the legacy over to the right heirs of the testator on the death of Christiana without issue. That clause is in these words: "It is further my will that if any of my sons and daughters die without lawful heirs, then in that case their portion reverts back to my heirs in common, share and share alike." To give this clause any effect whatever, the words lawful heirs must mean lawful issue. This according to the authorities would convey a fee tail in the real estate, and an absolute estate in the personalty. The will of John Biddle was made and proved in 1847, before the act abolishing estates tail was passed. Though an estate for life may be limited in chattels with a remainder to others; yet there can be no limitation of chattels in fee or fee tail, so as to vest in the *heirs* of the tenant in fee or tail, an indefeasible title. The estate in the realty if entailed may be barred by deed in the manner provided by law; and the estate in the personalty becomes absolutely vested in the first taker: Amelia Smith's Appeal, 11 Harris 9; Mengel's Appeal, 11 P. F. Smith 248.

Finding no error in the record, the decree of the Orphans' Court is affirmed, with costs to be paid by the appellants.