# Minnie Seybert v. Margaret Hibbert and William Hibbert, Appellants.

*Will—Rule of construction.*

Where well considered and unimpeached adjudications have assigned to certain forms of disposition a determinate result, the courts are bound by it as an ascertained law of construction.

*Will—Rule of construction—Technical language.*

Where a testator uses words without explanation or qualification in the context which, according to a settled rule of law, import an estate tail

or a fee simple the legal meaning of the will is to prevail as the actual meaning of the testator.

*Will—Inconsistent estates—General and particular intent.*

A testator cannot create estates inconsistent or incompatible with each other, and a particular intent must yield to a general intent, when necessary to preserve the compatibility of the estates created.

*Will—First devisee as a root of new succession—Rule in Shelley's case.*

Where the general intention is that the first devisee shall be the root of a new succession, and that those in remainder shall take as his heirs either general or lineal, they take by descent from him; consequently the estate given to him must be a fee, since nothing but an inheritable estate can be taken by descent.

*Rule in Shelley's case—Words and phrases.*

A devise for life may be enlarged to a fee simple or fee tail by a limitation upon the death of the devisee to his heirs. Such limitation will arise not only from the use of the word "heirs" but from any equivalent expression not restrained in effect by a different intent appearing from the will as a whole. Authorities on this point reviewed.

*Will—Construction—Indefinite failure of issue—Words and phrases.*

Upon a devise over on failure of issue, or by expressions of like import, an indefinite failure is understood; those in remainder taking nothing until the entire line of issue is extinct.

Authorities collated and reviewed.

*Estates tail—Creation of—Effect.*

While a fee tail can no longer subsist, it may still be created, to be by force of the statute transformed into a fee simple.

*Will—Construction—Rule in Shelley's case—Estate tail—Indefinite failure of issue.*

The devise in controversy was in the following terms: "I leave and bequeath to my four younger sons Jonathan T. Phillips, David Phillips, Timothy Phillips and John Phillips all the residue of my farm together with the coal scaffold at the river and lot belonging to it during their natural lifetime to be equally divided amongst them in quantity and quality and providing any of them dies without heirs the share of the deceased shall be divided amongst the surviving ones and at their death to be divided amongst their children and so on from one generation to another." *Held,* (1) That the failure of issue in contemplation is an indefinite failure of issue; (2) That the estate passing to the first devisees is an estate tail converted by the statute into an estate in fee simple.

Argued May 5, 1897. Appeal, No. 177, April T., 1897, by defendants, from judgment of C. P. Clarion Co., Aug. T., 1894, No. 313, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed.

Ejectment.   Before CLARK, P. J.

This case turns upon the proper construction of the devise in the will set out in the opinion of the court.  The facts involved are few and uncontroverted.

The will was executed on February 22, and probated February 28, 1856.  John Phillips, Sr., the testator, left a wife, six sons, Thomas, Jacob, Jonathan, David, John and Timothy, and three daughters, Sarah McCoy, Susanna (afterward intermarried with Horton), and Margaret the appellant (afterward intermarried with William Hibbert).

Of the four younger sons, to whom the devise in question was made, all were unmarried and without issue at the death of the testator except Jonathan, who then had one child.

At the death of the testator's widow in 1859, the four younger sons, to whom the residue of the farm had been devised, with power to make partition, divided the same by allotting to each of them twenty-seven acres, more or less, and each son thenceforth held his own portion in severalty.

David's portion is the premises in controversy in this suit. He married after his father's death and resided on his portion until his own death in 1894.  By his will, probated August 11, 1894, he devised the premises in controversy to his sister, Margaret Hibbert, the appellant, and another tract of thirty-four acres to his daughter, Minnie Seybert, appellee.

David left no issue surviving him except a daughter, the appellee and plaintiff below, who claims the premises in controversy under the will of her grandfather as a remainder to her in fee simple, on the death of her father, who, she alleges, had only a life estate therein.  The court directed a verdict for plaintiff.

Verdict and judgment for plaintiff.   Defendants appealed.

*Errors assigned* were, (1) That part of the general charge which reads as follows :  " We are of opinion that that will (of John Phillips, Sr.), vested but a life estate in David Phillips in the land in controversy, and at the death of David, Minnie Seybert, being his only surviving child, would be entitled to and would take the fee."    (2) That part of the general charge which reads as follows :  " We are satisfied from the reading of the will that the word ' children ' as used in it is a word of pur-

chase and not of limitation." (3) In affirming plaintiff's point, which was as follows: "Under all the evidence in this case and the law, the verdict of the jury should be for the plaintiff for the land in dispute."

*B. J. Reid*, with him *F. R. Hindman, J. A. F. Hoy* and *F. J. Maffett* for appellants.—A long line of authorities from 1 Dallas to 174 Pa., will make this a fee tail in the first takers.

There are certain well-established premises important to be borne in mind, as having a material bearing on the main question:

The words "dies without heirs" in this will, followed by a devise over to the collateral heirs of the first taker, must be read as if written "dies without heirs of his body," or "dies without issue."

Where, as here, the estate is to go to collaterals if the first taker dies without heirs or issue, and there is no express devise to such heirs of the body, the law implies one, and the will must be so read.

The direction given to the estate in case of a "failure of issue" sustains the implication that the issue shall inherit as heirs in tail.

From the foregoing premises it follows that the devise in question must be read as if written as follows—(the words in italics being supplied by intendment of law):

"I leave and bequeath to my four younger sons, Jonathan, David, Timothy and John, all the residue of my farm . . . . during their natural lifetime, *and to the heirs of their bodies,*— and providing any of them dies without heirs *of their bodies,* the share of the deceased shall be divided amongst the surviving ones, and at their death to be divided amongst their children, and so on from one generation to another."

On this, the legitimate reading of the devise, without more, could there be any doubt that it gave an estate tail to the first takers? But there are other abundant reasons and authorities requiring the same conclusion

It is a well-settled rule of construction that if a devise over is to take effect on an indefinite failure of issue of the first taker, the latter takes an estate tail.

The failure of issue provided for in this devise was an indefinite one.

*Harry R. Wilson*, with him *Cadmus Z. Gordon*, for appellee.

" When a festive occasion your spirits unbend,
    You should never forget the Profession's best friend;
  So we'll send 'round the wine, and a light bumper fill,
    To the jolly testator who makes his own will."
                                    MAZURIE'S ESTATE, 132 Pa. 161.
See " The jolly testator who makes his own will."
                                    7 AMER. L. REV., 387.

It is evident that this case is not ruled for the appellant by any one case within the books, or the learned counsel would not have referred us by one hundred and thirteen citations to the ill-expressed wills of others, to be examined, and in none of which the same language is used, as in this will.

The counsel has overlooked a few cases on wills in his diligent search from 1 Dallas to 174 Pa., to which we will hereinafter refer.

We contend that the devise in this case of a life estate to David in the first instance, with remainder to his children as a class, does not infringe upon the rule in Shelley's case.

David took a life estate, and the fee was limited to his children. The rule in Shelley's case, although still in force, is not a favorite in Pennsylvania and many other states, and will not be applied where the technical word children, or heirs in the sense of children, is used, as in this case.

The primary and controlling devise here is plainly a life estate to David, and at his death a contingent remainder or an executory devise to his children as a class, and this was both the testator's particular and general intent, and the burden is on the appellant to satisfy the court, that when the testator used the words " during their natural lifetime " " and at their death to be divided amongst their children," that he did not mean what he said.

This devise in question does not conflict with the Act of April 27, 1855, P. L. 368, sec. 1.

The technical words " surviving ones," mean in this will a definite failure of issue. The other words used also intend a definite failure of issue.

It is clear from the whole will that the testator intended to give his son, David, only a life estate, and the Supreme Court has frequently said with great emphasis, that such intent should and must prevail over any technical rules of construction, and

not be thwarted by the act of 1855, or by the rule in Shelley's case: Woelpper's Appeal, 126 Pa. 562.

In using the words "dies without heirs," it is clear that the testator used the word "heir" as synonymous with children, and not in its general technical legal sense, for all of the testator's children, as well as the surviving ones of the four brothers, would have been heirs of David, had he died without children, and it was impossible for him to die without heirs, and at the same time leave surviving brothers, but of course had David died without children, then the testator wanted the farm kept in the family by its going to the survivors of the four brothers. ·

The clause "and providing any of them dies without heirs (meaning children) the share of the deceased shall be divided amongst the surviving ones" meant only to provide against a lapse. This direction is followed by a devise over to their children in technical terms "and at their death to be divided amongst their children:" Waugh's Appeal, 78 Pa. 436.

A devise to one for life "and after his decease, then the same to go to his children, share and share alike, but should he die without issue then the said property to be equally divided among my surviving heirs;" held he took a life estate only, the devise not being to him and his children, but to them by way of remainder: Curtis v. Longstreth, 44 Pa. 297.          •

To the same effect is the leading case of Guthrie's Appeal, 37 Pa. 9.

These last two cases, together with Woelpper's Appeal, 126 Pa. 562, and Nes v. Ramsey, 155 Pa. 628, are sufficient without anything further to sustain the judgment on the verdict in the court below.*

OPINION BY SMITH, J., October 11, 1897:

Under the will of his father, John Phillips, Sr., David Phillips took an estate in the land in controversy, which he devised to his sister, Margaret Hibbert. His only surviving child, Minnie Seybert, contends that under his father's will he took but a life estate, and the remainder in fee vested in her. His sister contends that he took a fee tail, which, converted into a fee simple

---

* The cases relied upon and referred to by counsel for appellant having been exhaustively considered in the opinion of the court, are not set out in the arguments.

by the act of April 27, 1855, passed by his devise to her. The rights of the parties, therefore, depend on the quantum of estate devised to David Phillips.

The devise is in the following terms : " I leave and bequeath to my four younger sons, Jonathan T. Phillips, David Phillips, Timothy Phillips and John Phillips, all the residue of my farm together with the coal scaffold at the river and lot belonging to it during their natural lifetime to be equally divided amongst them in quantity and quality and providing any of them dies without heirs the share of the deceased shall be divided amongst the surviving ones and at their death to be divided amongst their children and so on from one generation to another."

From the variety of purposes and modes of expression found in wills, it is measurably true that each will is in the nature of a law unto itself, and that the construction given to one is no absolute guide to the meaning of another. The import of particular phrases, and even the effect of technical language and words of art, are so largely controlled by the context, the situation of the parties, and the evident purpose of the testator in its entirety, that language which in one will may be held to indicate a certain intention may in another, from differences in the context and the attending. conditions, receive a different interpretation. Nevertheless, there are some principles, definitely fixed, and invariable in their application, which are to be followed in the construction of all wills. " Where well considered and unimpeached adjudications have assigned to certain forms of disposition a determinate result, we are bound by it as an ascertained law of construction : " George v. Morgan, 16 Pa. 95, BELL, J. It is through the application of the rules thus ascertained that the question arising in the present case is to be determined. The principles to be applied here relate to the limitation of the estate given to the first devisee, the devise over upon his death, and the interpretation of the language employed in defining or describing the estates devised. A brief review of the authorities will exhibit the bearing of these principles on the case in hand.

While a will is to be so construed as to carry out, as far as practicable, the testator's intention, it not infrequently happens that the intention is defeated by the inexorable legal effect of the language employed. Usually this result is due to the rule

in Shelley's case. " When a testator uses words, without explanation or qualification in the context, which, according to a settled rule of law, import an estate tail, the legal meaning of the will is to prevail over the actual intention of the testator : " Vaughan v. Dickes, 20 Pa. 509, WOODWARD, J. The rule is the same when words are used that import a fee simple. As the testator cannot create estates that are inconsistent or incompatible with each other, a particular intent must yield to a general intent, when necessary to preserve the compatibility of the estates created. Where the general intention is that the first devisee shall be the root of a new succession, and that those in remainder shall take as his heirs either general or lineal, they take by descent from him ; consequently the estate given to him must be a fee, since nothing but an inheritable estate can be taken by descent. A life estate in the first taker, who is to become the root of the new succession, is incompatible with the transmission of an estate of inheritance to his heirs. His estate, therefore, though from a particular intent limited in terms to his life, is by operation of law enlarged to an estate of inheritance that effect may be given to the general intent. No expression of intention, however explicit and absolute, can hold his interest down to a life estate when the further intention appears that those in remainder shall take as his heirs ; hence, as was said by Mr. Justice TRUNKEY in Blair v. Miller, 30 W. N. C. 486, " Wills have been turned upside down by the rule in Shelley's case."

A devise for life may be enlarged to a fee simple by a limitation, upon the death of the devisee, to his heirs, or to a fee tail by a like limitation to the heirs of his body. Such limitation will arise not only from the use of the words " heirs," or " heirs of the body," but from any equivalent expression not restrained in effect by a different intent appearing from the will as a whole. Examples of these results are numerous.

Thus, a fee simple has been created by the following limitations upon the death of the life tenant : " With remainder over to his heirs in fee : " Doebler's Appeal, 64 Pa. 9 ; " To the lawful heirs of them the said A. and wife in fee simple : " Auman v. Auman, 21 Pa. 343 ; " To be equally divided among them the right heirs of my said niece : " Physick's Appeal, 50 Pa. 128 ; " Reversible after her death to her children, if any surviv-

ing, or issue of such children:" McKee v. McKinley, 33 Pa. 92; "To such persons as at the decease of the said E. shall and may be her heirs or legal representatives:" Ralston v. Waln, 44 Pa. 279; "To such person or persons as should be her right heirs, their heirs, executors, administrators and assigns forever, in such proportions as they would be entitled to in case she had died intestate seized and possessed of the property in her own right:" Nice's Appeal, 50 Pa. 143; "To such person or persons as would be entitled to the same if the said H. had died intestate seized of the said premises in fee simple, and in such manner and for such quantity of estate as such person or persons would in such case be entitled to by law:" Dodson v. Ball, 60 Pa. 492; "To such person or persons as would be entitled to the same in case my said daughters had survived their respective husbands and departed this life intestate seized thereof in fee:" Yarnall's Appeal, 70 Pa. 335; "At their death shall descend to their children, if any, if no children, then to descend to the brothers and sisters and their children:" Potts v. Kline, 174 Pa. 513.

A fee tail has been created by the following limitations upon the death of the life tenant: "To my daughter R., and she shall have it as her own during her life, and then it is to come to the heirs of her body for their own use:" Bender v. Fleurie, 2 Grant, 347; "To W. my son, and to J. my son, and to their children after them:" Blair v. Miller, 30 W. N. C. 486; "When the children or legal heirs of the said W. come to the age of twenty-one years or more, then the one half of the said farm to belong to the children or legal heirs of the said W. forever:" Sheeley v. Neidhammer, 182 Pa. 163; "To the heirs male of the body of my son E. lawfully begotten, and the heirs and assigns of such heirs or heir male forever:" Carter v. McMichael, 10 S. & R. 429; "If he shall have lawful issue, then to them, their heirs and assigns forever:" Paxson v. Lefferts, 3 R. 59; "To the heirs of his body lawfully begotten and to their heirs forever:" George v. Morgan, 16 Pa. 95; "To descend to his legitimate offspring forever:" Allen v. Markle, 36 Pa. 117; "To descend and go to the child, and if children, share and share alike:" Haldeman v. Haldeman, 40 Pa. 29; "To his legal heirs, if he have any, (meaning heirs of the body), at his death:" Bassett v. Hawk, 118 Pa. 94: "At his death the use and occu-

pancy to be continued to his issue, if he shall so have:" Armstrong v. Michener, 160 Pa. 21; "To her lawful issue, to have and to hold the same in common to them, their heirs and assigns forever:" Grimes v. Shirk, 169 Pa. 74.

Except in the first three of the cases last cited, the limitation was followed by a devise over on failure of issue. This, of itself, is sufficient to create a fee tail in the first taker. "An estate tail would be implied from the devise over, even if there were no gift of a remainder directly to the issue:" Kay v. Scates, 37 Pa. 31, STRONG, J. The devise over on default of issue implies that if there be issue they shall take. Whether the primary devise be in fee simple or for life, such a devise over converts it into a fee tail; cutting it down if a fee simple: Amelong v. Dorneyer, 16 S. & R. 323; Hackney v. Tracy, 137 Pa. 53; and enlarging it if a life estate. Among the limitations over on default or failure of issue, with no intervening remainder given directly to the issue, by which a life estate has been enlarged to a fee tail, are the following: "If she should die without lawful issue of her body, to be equally divided among my other three children:" Mast and Morris' Appeal, 2 W. N. C. 404: "In case my granddaughter shall not leave issue at her death, I give and devise my said plantation to the children of my sister R.:" Price v. Taylor, 28 Pa. 95; "Upon the decease of either or any of my said sisters or nieces, without issue, (if with issue the issue inherit their shares) I grant and convey their portion of my estate for the use of my other sisters and children in fee:" Potts' Appeal, 30 Pa. 168; "If he should die leaving lawful issue, to him, his heirs and assigns forever, but if he should die leaving no such lawful issue," then over: Wynn v. Story, 38 Pa. 166. And "Where the remainder over, after dying without heirs, is limited to one who is or may be heir to the first devisee, this has always been determined to be an estate tail:" Amelong v. Dorneyer, 16 S. & R. 323, DUNCAN, J. This relation between the first devisee and those taking by the devise over is a feature of nearly every case in which such a devise occurs.

Upon a devise over on failure of issue, or by expressions of like import, an indefinite failure is understood; those in remainder taking nothing until the entire line of issue is extinct. This is settled by numerous authorities referred to in part by

Mr. Justice GREEN in Hackney v. Tracy, 137 Pa. 53. And upon a devise over on the death of the first taker "without heirs," or "without legal heirs"—terms of equivalent meaning—to collateral relatives who would take as his heirs, death without heirs of the body is to be understood, since these are the only heirs to whom this description can apply. "It is very plain that the clause 'leave no heirs' must be read 'leave no issue;' for the devisees being all related to each other, neither of them could die without leaving an heir if he left a survivor:" Wall v. Maguire, 24 Pa. 248, LOWRIE, J. "As the devisee's brothers and sisters would have been his heirs on leaving no issue, the testator must have meant lineal descendants and not collateral, when he used the words 'lawful heirs:'" Moody v. Snell, 81 Pa. 359, Per Curiam. To the same effect are Braden v. Cannon, 24 Pa. 168; Covert v. Robinson, 46 Pa. 274; Bassett v. Hawk, 118 Pa. 94; Cochran v. Cochran, 127 Pa. 486. And a provision that "if any of my sons and daughters dies without lawful heirs, their portion reverts back to my heirs in common," is to receive the same construction. "To give the clause any effect whatever, the words 'lawful heirs' must mean 'lawful issue:'" Biddle's Appeal, 69 Pa. 190, AGNEW, J.

When the words "heirs" or "heirs of the body" are used, the presumption is that they are employed in their legal sense, and the intent to use them otherwise must unequivocally appear: Guthrie's Appeal, 37 Pa. 9. When the word "children" is used to denote the entire line of lineal descent, it is to be understood as meaning "heirs of the body." It is never applied otherwise where "evidently intended to define an entire line of descent:" Haldeman v. Haldeman, 40 Pa. 29; Yarnall's Appeal, 70 Pa. 335. "Where a testator intends the estate to go to the whole body of persons in legal succession constituting in law the entire line of descent lineal, he evidently means the same thing as if he had said 'issue' or 'heirs of the body;' or if he intends it to go to the whole line of descent, lineal and collateral, he means the same thing as if he had used the term 'heirs,' which as a word of art describes the same line of descent:" Yarnall's Appeal, supra, AGNEW, J. "Whenever the words of the limitation can be fairly and justly interpreted to mean 'heirs,' or 'heirs of the body,' an estate of inheritance will be presumed to have been intended by the testator. When-

ever he means to limit an estate to the heirs of the life tenant, no matter how his intent is expressed, an estate of inheritance will vest in the tenant for life: " Dodson v. Ball, 60 Pa. 492, AGNEW, J. " Any form of words sufficient to show that the remainder is to go to those whom the law points out as the general or lineal heirs of the first taker will be sufficient, unless it be perfectly clear that such heirs are selected on their own account, and not simply as heirs of the first taker: " Price v. Taylor, 28 Pa. 95, LOWRIE, J. An estate tail is created by the limitation " to descend to the lawful heirs from generation to generation," since " this could no otherwise be effected than by estates tail given to each of the devisees: " Gause v. Wiley, 4 S. & R. 509, TILGHMAN, C. J.

While a fee tail can no longer subsist, it may still be created, to be by force of the statute transformed into a fee simple. Whether a fee tail was created by the devise in the present case, depends on the effect of the primary limitation, and of the devise over. This is to be determined by the principles already referred to as governing the construction of the language employed; since nothing in the context, or the situation of the parties, requires a departure from the settled rules for its interpretation.

It is evident that the testator intended equality among the sons; equal shares in quantity and quality and equal estates. The estate devised to each was limited, first, to his own life; next, to his children, " and so on from one generation to another; " and finally, on his death " without heirs," to the survivors. The shares given directly, and those passing by the devise over, are alike thus limited to the children. The language of this limitation embraces the entire line of descent or lineal succession to the remotest generation. The intention that the estate should descend from the sons to their lineal heirs, as long as the line should endure, is clearly apparent. " This being the intent of the testator, it is immaterial whether he describes the line of descent by a word of art, or by a periphrasis, meaning the same thing : " Yarnall's Appeal, supra, AGNEW, J. This intention can be carried out only through estates tail in the sons. Nothing but the whole line of issue, the heirs of the body, answers the testator's description of those who are to take by this limitation. Nothing in the situation of the par-

ties demands a different interpretation of the language. The limitation is not to children living at any particular time. At the death of the testator, three of the sons were unmarried and without issue. The fourth had one child, but whether this was born previous to the date of the will does not appear. The words of limitation, while inapplicable and inadequate as descriptio personæ, sufficiently indicate the character in which the testator intended those in the line of succession to take, since they are strictly commensurate with the entire line of lineal heirship. In legal effect, therefore, the limitation is to the heirs of the body, creating an estate tail. This is quite as manifest, to say the least, as in the limitations, " to their children after them," in Blair v. Miller; " To his legitimate offspring forever," in Allen v. Markle; " To the child, and if children, share and share alike," in Haldeman v. Haldeman; each of which was held to create a fee tail.

Next as to the devise over to the surviving brothers. Here, as in Wall v. Maguire, Moody v. Snell, and other cases cited on this point, since none of the sons could die without heirs leaving a brother surviving, the devise over on dying " without heirs " is in legal effect a dying without issue, or heirs of the body, and thus creates a fee tail. The failure in contemplation is unquestionably an indefinite failure; not until the line of a son, " from one generation to another," is extinct, do the survivors take. In this aspect of the question it is immaterial how the limitation to the children of the testator's sons is to be construed. The devise over, whether with or without an intermediate estate given to the issue of the first taker, enlarges his life estate to a fee tail. Further, the devise over is to those who would take as heirs of the first devisee, and this has always been held to create an estate tail: Amelong v. Dorneyer, supra.

Thus, features which are severally sufficient to enlarge a life estate to a fee tail are here concurrent; and upon the principles settled by all the authorities, the estate devised to David Phillips must be pronounced a fee tail, which the statute converted into a fee simple. His devise to Margaret Hibbert passed a fee simple, and the court below should have directed a verdict for the defendant.

Judgment reversed.